[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 85 
The objections made on behalf of the appellant to the order appealed from will be noticed in their order. *Page 86 
1. It is objected that the act under which the services were rendered, for which compensation is sought to be recovered in this proceeding, is unconstitutional, upon the sole ground that the office created by the act was an existing office at the time of the adoption of the Constitution of 1846, the duties of which were then performed by county officers; and that, therefore, the appointment or election to such office could only be by such county authorities as the legislature might direct, or by the electors of the county. (Const., art. 10, § 2.)
The claim is that the duties of the office of commissioners of records for the city and county of New York, under the act before us (Laws of 1855, chap. 407), were the same as those devolved upon the register of the city and county of New York. The duties of the office of register are defined by law, and were not interfered with by the act of 1855. His duty was to record conveyances, and make and keep proper indices to the records of conveyances, to preserve the records in his custody, to give copies and exemplications thereof, to make searches, and perform such other duties pertaining to the records of conveyances of real estate as are imposed upon county clerks. (1 R.S., 763, § 43.) The law prescribes his office hours as well as his general duties, and provides only for an index to each book kept in his office. (2 R.S., 285, § 54; id., 286, § 61.) The register is relieved from no duty, nor deprived of any of his powers or emoluments of office by the act in question.
The duties of the commissioners created by the law of 1855 were entirely outside of those devolved upon or performed by the register and were new duties, such as did not pertain to any office theretofore existing, and were special and temporary in their character. The act had respect to the permanent preservation of important records and muniments of title, and the duplication of copies thereof, and printing the same.
The office of commissioner under the act did not supersede that of register, or at all affect that office, its duties or emoluments. *Page 87 
This objection is not, therefore, tenable. (People v.Pinckney, 32 N.Y., 377.)
2. The next objection is that the accounts are not properly certified. The labors were performed between June 1, 1864, and February 28, 1866, and were certified after the latter date, by a single certificate, signed by all the commissioners in office at the time. One of the commissioners named in the act died October 10, 1863, and another ceased to be a resident of the State in 1864; and the last meeting of the commissioners he attended was July 12th of that year. The remaining commissioners united in the certificate.
It is not claimed that the commission ceased to exist whenever a vacancy occurred, or that the power of the remaining commissioners was suspended until the vacancy should be filled.
In People v. Nostrand (46 N.Y., 375) the act under which the question arose (Laws of 1869, chap. 905) required vacancies to be filled, as they occurred, by appointment; and the court held that, a vacancy existing, the power of the remaining commissioners was suspended until an appointment should be made.
Here, there is no provision for a vacancy, or for the appointment in place of any commissioners who should die, refuse to act, resign or remove from the State. The three commissioners still in office having joined in the certificate, the presumption is that the act was regularly done, and at a meeting of all. (Downing v. Rugar, 21 W.R., 178.) That those who gave the certificate could act, although the other commissioners had died or become disqualified, see the authorities cited by Judge COWEN, at page 182 of the case cited.
A grant of power, in the nature of a public office to several, does not become void upon the death or disability of one or more. Such a grant of power is not in the nature of a private franchise which, when granted to two, without words of survivorship, might not, by the rules of the common law, survive the death of one. But the policy of the law is to *Page 88 
guard against the failure of a public service; and therefore, by statute, it is provided that whenever any power, authority or duty is confided by law to three or more persons, and whenever three or more persons or officers are authorized or required by law to perform any act, such act may be done and such power, authority or duty may be exercised and performed by a majority of such persons or officers upon a uniting of all, unless special provision is otherwise made. (2 R.S., 555, § 27.) In certain cases a majority may act, when all have been notified to attend a meeting of those intrusted with the power.
By death or disqualification of a portion of the commission the number of its members is reduced, and all do meet when all who are living and qualified to act come together.
3. It is claimed that the county treasurer can only pay such claims as have been audited by the proper financial officer of the city or county. The act declares that the expenses incurred by the commissioners shall be paid by the county treasurer upon the certificate of the commissioners. The act is special, and to provide for a special service and by an agency outside the ordinary city or county government of New York, and is not repealed in any of its provisions by implication, by general provisions for the government of the city or county, or for the auditing and paying the ordinary expenses of the two governments.
A repeal of statutes by implication is not favored in the law; and when both the latter and former statute can stand together, both will stand unless the former is expressly repealed, or the legislative intent to repeal it is very manifest.
The strong presumption here is against any such intent. The policy of the legislature was to devolve important duties upon gentlemen of its own selection, who were to act without compensation, and to give them a large discretion in the performance of their duties, and make them the sole judges and auditors of their own expenditures.
The several acts reorganizing the city government or *Page 89 
remodeling the county government of New York, and prescribing and regulating the duties of the officers of the two governments respectively, did not repeal or in any respect change the provisions of the act of 1855, or the powers and duties of the commissioners named therein, or the duty of the county treasurer to pay the necessary expenses incurred by them, upon the evidence and the vouchers prescribed by the act.
It is averred by the relator in his affidavit, and not denied, that in 1866 $100,000 was appropriated by the board of supervisors of the county for the payment of the expenditures of the commissioners under the act of 1855, and that there still remains in the treasury more than sufficient of this appropriation to satisfy the relator's claim. No good reason is assigned why the treasurer should not comply with the law, and pay from this balance the amount claimed.
4. There is no distinction between the different parts of the relator's claim. It is a singular objection, made to a small part of it, that several years since an order was made by the Supreme Court for its payment, which has not been obeyed by the authorities of the city and county, and that the relator, notwithstanding the order of the court, is still without his money.
There is but little force in any of the objections; but this is clearly frivolous.
This disposes of all the objections to the order of the Supreme Court, and to the claim for the relief sought by the relator.
The order appealed from must be affirmed, with costs.
All concur.
Order affirmed. *Page 90