CHARLES A. HANKINS, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

A board of county canvassers organized under the election laws of the State, although composed of town officers, do not meet as such; or to perform duties relating exclusively to town or county matters, but meet as a distinct board for a special service (MILLER and EARL, JJ., dissenting).

The provision of the act of 1869, providing for the support of the government of the city of New York (chap. 875, Laws of 1869), which requires the mayor and comptroller to designate newspapers in which to publish the proceedings of the board of supervisors and proceedings relating to

county affairs, does not include proceedings of the board of canvassers for the city and county of New York, and there is no repugnancy between that provision and the statutory regulations for the publication of the proceedings of election boards (§ 11, title 5, chap. 130, Laws of 1842). (MILLER and EARL, JJ., dissenting.)

Accordingly, *held* (MILLER and EARL, JJ., dissenting), that the power given to the boards of county canvassers to designate the papers in which the results of the elections shall be published, was not taken away from the board of canvassers of the city and county of New York by said provision of the act of 1869; and that other than the official papers having been designated, in 1870, by the board, the city corporation was liable for the expense of the publication.

(Argued December 10, 1875; decided January 25, 1876.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment in favor of defendant, entered upon an order dismissing plaintiff's complaint on trial.

The complaint alleged in substance that the board of county canvassers for the city and county of New York, by a resolution of said board, passed May 30, 1870, designated the New York Official Railway News, a newspaper of which plaintiff was the proprietor, as a paper in which the results of an election held in said city and county May 17, 1870, should be published, and authorized the publication. That plaintiff, in pursuance of such authority, published the official statements and declaration of said board. That demand for payment of the reasonable price for such publication was made of the city comptroller, who refused to pay the same.

On the opening of the case on trial, defendant's counsel moved to dismiss the complaint, which motion was granted, and plaintiff's counsel duly excepted.

*John S. Lawrence* for the appellant. The election law and tax levy act can stand together. (Sedg. Const. Law [2d ed.], 97, 104; *Hayes* v. *Symonds*, 9 Barb., 260; *In re Evergreens*, 47 N. Y., 216; *Mongeon* v. *People*, 55 id., 613; *Crane* v. *Reeder*, 22 Mich., 322.) The canvassers are State officers. (Const., art. 10, § 3; 17 N. Y., 64, 67.) Plaintiff can recover under the provisions of chapter 375, Laws of 1872. (*People* v. *Green*, 63 Barb., 300.)

Opinion of the Court, per *Curiam.*

*D. J. Dean* for the respondent. In order to recover plaintiff was bound to allege and prove that his paper was designated by the mayor and comptroller. (Laws 1863, chap. 227, p. 407; Laws 1865, chap. 646, p. 1326 ; 2 Laws 1867, chap. 586, p. 1597; id., chap. 806, p. 1993; 2 Laws 1868, chap. 853, p. 2007; id., chap. 854, p. 2025 ; 2 Laws 1869, chap. 865, p. 2113 ; 1 Laws 1870, chap. 383, p. 882; *In re Astor*, 50 N. Y., 366; *In re Smith*, 52 id., 526; *In re Douglas*, 46 id., 42.)

*Per Curiam.* The general laws of the State make provision for the election of county and State officers, including the canvass of the votes by the inspectors of election and the several boards of canvassers, the certifying the result and the publication by the boards of county canvassers of their determination. Boards of county canvassers are created and organized, not for a merely local purpose but to execute in part and in some of its details a general law of the State, in the due execution of which every part of the State and every citizen has an interest.

The board, although composed of town officers, supervisors and assessors, do not meet as such or to perform an official duty relating, exclusively, either to town or county matters. They organize not as a board of supervisors or assessors, but as a distinct board for a special service. They bear a name indicative of their duties, take the constitutional oath of office, choose one of their number chairman, the county clerk being *ex officio* secretary, and perform the statutory duty assigned them. By law they are required to cause a copy of their determination to be published in one or more of the newspapers of the county, with the statement upon which the determination was made. (1 R. S. [Edm. ed.], 133, *et seq. ;* Laws of 1847, chap. 240.)

The county canvassers have the power to designate the papers in which the results of the elections shall be published and the number of papers in which the publication shall be made, and the expense is, with the other expenses of the

election, made a county charge. (1 R. S., *supra*, 148, § 6.) This power has not been expressly taken from the boards of canvassers. Neither has the statute conferring it been in terms repealed, nor has the county of New York been by any statute excepted from its provisions. If by any means or by any legislation the county of New York is not within the operation of this general law, it is because by implication the legislature in making laws for the government of the county of New York have unmistakably manifested an intent to make that county an exception to the general law. The intent is sought to be spelled out from the peculiar clauses of the several tax levy acts passed for the support of the county government. The last act bearing upon the subject, prior to the rendering the service for which a recovery is claimed in this action, was passed in 1869. (Laws of 1869, chap. 875.)

Similar acts varying somewhat in phraseology had been passed annually for several years previously, but the act quoted being the last act upon the subject and covering the whole ground superseded prior laws and must be regarded as the only law in existence. That act merely appropriated, in making provision for the payment of county expenses, "for advertising, $40,000;" and added, "the mayor and comptroller shall, from time to time, designate six daily newspapers and six weeklies, but no more, in which to publish the proceedings of the board of supervisors and all proceedings and notices relating to county affairs."

A repeal of statutes by implication is not favored, for very obvious reasons. Among others, the legislature may well be deemed competent to declare their whole intent in intelligible language, and therefore courts ought not to attribute an intent and give effect to a law beyond its terms, except upon the plainest manifestation of the intent of the law making power. Courts have adopted rigid rules upon the subject and they ought not to be departed from. It is not enough to justify the holding a statute repealed, by the mere passage of a subsequent statute upon the same or a cognate subject, that within the apparent policy of the later act the prior act

might reasonably have been repealed, as within the reason of the legislation and fully to carry out the presumed intent of the legislature. Statutes are not adjudged to be repealed upon a conjecture of what the legislature would probably have done had their attention been called to the particular act claimed to have been superseded. The rule is, that a statute only operates as a repeal of a former one to the extent that the two are repugnant; if both can stand, and to the extent that they can stand and have effect, they will both have effect. (*People* v. *Palmer*, 52 N. Y., 83 ; *In re The Evergreens*, 47 id., 216 ; *Mongeon* v. *The People*, 55 id., 613.) There is no repugnancy between the statutes making provision for the support of the government of the county of New York and the provisions therein for designating the papers for the publication of proceedings of county officers and boards, and the statutory regulations concerning elections and the publication of the proceedings of election boards. They are not in conflict, but both, in the language of the cases, can stand and have full effect. Whatever might have been said in respect to some of the prior tax levy acts, more comprehensive and far reaching in their terms, the law governing this case (Laws of 1869, *supra*) comes far short of reaching the general statutes under which the plaintiff asserts his claim. There is no prohibition of the employment of other papers, or a forbidding to pay for publications in papers other than those selected in pursuance of the act; neither is the publication of the proceedings of the board of county canvassers among the services for which the mayor and comptroller have authority to select papers. The statement and determination for which the plaintiff seeks to recover were neither " proceedings of the board of supervisors, or proceedings relating to county affairs." " County affairs " are those relating to the county in its organic and corporate capacity, and included within its governmental or corporate powers. We would hardly expect to find the legislature putting it into the power of the city officers of New York to prevent the publication of proceedings so vitally affecting the whole

State as do the canvass of the votes of that locality and the determination of the result, which public policy requires to be published in every other county under the direction of the proper board, or to leave it to the caprice of any outside officials, whether they should be published at all, or in what or what number of papers. The legislature should speak in no uncertain language before such effect should be given to their acts ; at least, it should not be left to conjecture, or to be spelled out.

The judgment should be reversed and a new trial granted, costs to abide the event.

MILLER, J. (dissenting). The plaintiff, as proprietor of a newspaper in the city of New York, claims to recover charges made for the publication of the official canvass of the board of canvassers of the city and county of New York, of the election held in said city on the 30th day of May, 1870, which was done in pursuance of a resolution of the board of canvassers. The right of the plaintiff to maintain the action rests entirely upon the provisions contained in 1 Revised Statutes (Edm. ed.), 134, section 11. It will be noticed that the board of canvassers for the city as well as the county directed the publication, and it is insisted that this enactment has been modified or repealed by subsequent legislation, by which no money can be paid for advertising in the city and county of New York, except for advertisements in newspapers authorized by the mayor and comptroller. Since 1863, and evidently for the purpose of restricting the expenses of printing advertisements for the city and county, annual provision has been made by the legislature for the appointment of newspapers for this purpose. Those which relate more particularly to the subject of this action are contained in the Laws of 1869 and 1870. By chapter 875, Session Laws 1869, section 1, the mayor and comptroller are required, from time to time, to designate six daily and six weekly newspapers, " but no more, in which to publish the proceedings of the board of supervisors and

all proceedings and notices relating to county affairs."
The canvass was a proceeding in reference to the election
which had been held, and required a statement of the
votes which had been taken and the number cast for the
several candidates. It related to county affairs, and the pub-
lication of the same was evidently included within the
meaning of the statute cited. By chapter 383, Session Laws
of 1870, section 1, it was enacted that all advertisements for
the city government shall be published in newspapers to be
designated by the mayor and the comptroller, and the pay-
ment of "any money for advertising except to such news-
papers" is prohibited. The canvass published was a state-
ment of the determination of the board of city as well as
county canvassers in relation to the election which had been
held, and the publication was therefore an advertisement for
both and made in direct conflict with the statute last cited.
In each of the laws referred to, a specific amount is provided
for the payment of such expenses, thus indicating that it was
intended to embrace only sufficient to cover the number of
newspapers designated; for an unlimited license to publish
in any newspapers which a board of canvassers might select
would increase the expense beyond any reasonable amount
which might be provided when the newspapers were
restricted. The design was to limit the expenditure for such
purposes and to prevent the exercise of the power of both
the city and county authorities, and other bodies, which had
previously been authorized to direct the publication of adver-
tisements to an unlimited extent. The provisions in question
clearly embraced all advertising for the city and county and
there is no valid ground for claiming that it was confined to
local improvements or merely proceedings of the common
council or the board of supervisors. Nor is there any reason
for the contention that the fund provided for the payment of
the demands for advertising was a special one and only for
purposes of paying for printing other publications besides the
canvass. Whether any designation of papers was made
every year, under the provisions of the different acts, as

required, is not material, as the general provisions in relation to the appointment of newspapers are not limited in their effect to the respective years in which they were enacted. (*Matter of Astor*, 50 N. Y., 366.) The provisions referred to are mandatory, and it is settled that publications cannot lawfully be made for city and county purposes in newspapers other than those designated. (*Matter of Astor, supra ; Matter of Smith*, 52 N. Y., 526 ; *Matter of Douglass*, 46 id., 42.)

As the provisions cited are in conflict with the statute relied upon by the plaintiff, it necessarily follows that the first enactment must yield to the latter. It is a well settled rule that a subsequent statute which is clearly repugnant to a prior one necessarily repeals the former, although it does not do so in terms; and even if the subsequent statute be not repugnant in all its provisions to a prior one, yet if the latter statute was clearly intended to prescribe the only rule that should govern in the case provided for, it repeals the original act. The maxim *Leges posteriores priores contrarias abrogant* is applicable in such a case. (*Davies* v. *Fairbanks*, 3 How. [U. S.], 636 ; *Dexter and Limerick Plank-road Co.* v. *Allen*, 16 Barb., 15.) It is plain that the latter statutes were intended to provide a new rule for publication in the city and county of New York, and hence to that extent they repealed or modified the provision of the general law so far as that city was concerned. It is true, as is claimed by the learned counsel for the plaintiff, that a repeal by implication is not favored in the law, and when the latter statute can stand together with the former both will stand unless the former is repealed or the intent is manifest; but where it is entirely clear that the intention is to alter the law as is the case here and to limit its operation and effect, this rule has no application, and the doctrine may be invoked which has been repeatedly declared, that every statute is by implication a repeal of all prior statutes, so far as it is contrary and repugnant thereto, and that without any repealing clause. (*Commonwealth* v. *Kimball*, 21 Pick.,

373.)    See, also, *Rex* v. *Cator* (4 Burr., 2026). where the same intimation is given by Lord MANSFIELD.  As the intent is clear that the general law should not control, the case presents an exception to the rule that general laws control local laws, and the true construction to be placed upon the local enactments cited and referred to is, that they were designed as a modification of the general statute, so far as it related to the city and county of New York.

There is no force in the position that the board of canvassers were State officers, and therefore are not within the provisions of local acts of legislation.  They are in fact local officers, selected for local purposes, paid by the local authorities, and in no case exempted from the effect of the laws relating to the local government.  The provisions of section 35, chapter 38, Session Laws of 1870, to the effect that all provisions of the election laws of the State are applicable to all elections in the city of New York, could not have been intended as a repeal or modification of the laws providing for the payment of printing done for the city or county, and relate merely to the conduct and proceedings in reference to the election, and not to the expenses of publishing the canvass.

With this limitation the law in question can have full force and effect.  The plaintiff also claims that the right to compensation is established, if otherwise in doubt, by chapter 375, Session Laws of 1872.  This act authorized the board of audit therein named to allow claims of similar character, notwithstanding the want of authority to publish, and directed the comptroller to pay the same.  The difficulty is, in allowing the plaintiff the benefit of the law last cited, that it nowhere appears that the board of audit ever acted upon the plaintiff's claim, and had it done so a remedy could have been obtained by a mandamus to compel payment of the amount allowed.  The repeal of acts in conflict with the act last cited, which constitutes a portion of it, has no effect upon the acts before referred to, providing for the selection of newspapers to publish advertisements.  There is no valid ground

upon which the plaintiff's claim can be upheld, and the case was properly disposed of in the court below.

The judgment should be affirmed, with costs.

For reversal, ALLEN, FOLGER, RAPALLO and ANDREWS, JJ.

For affirmance, MILLER and EARL, JJ.

CHURCH, Ch. J., did not vote.

Judgment reversed.