NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
July, 1877.

## MATTER OF HANOVER.

*In the matter of the application of* MARK D. HANOVER
*for letters of administration on the estate of* ADOLPH
VAN STEINWEHR, *deceased.*

The provisions of the Revised Statutes (2 *R. S.*, 75, § 31,) giving the public
administrator of the city of New York, in certain cases, the right to
administration in preference to a foreign administrator, are not repealed
by implication by the act of 1863 (L. 1863, ch. 403, p. 694) providing for
the issuing of letters of administration to a foreign administrator or
person authorized by him to receive them.

Under the act of 1863 (L. 1863, ch. 403), providing for granting admin-
istration to foreign administrators, the surrogate has no power to grant
letters until the provisions of the act in regard to notice, publication,
and examination as to creditors, &c., have been complied with.

The practice that had prevailed for many years prior to 1863 in the office of
the surrogate of the County of New York of granting administration to
the attorney of a foreign administrator, *held* to have been superseded
by the act of 1863.

Under that act (L. 1863, ch. 403,) administration can not be granted to a
foreign administrator or his representative merely upon giving security
for the value of the whole estate, without complying with other
requirements.

ON an application for letters of administration on
the estate of Adolph Van Steinwehr, deceased, on
the petition of Mark D. Hanover, it appeared ·that
decedent died a resident of the State of Ohio, intestate,
possessed of certain personal property in the County
of New York, not exceeding $10,000. On the 31st
day of March, 1877, letters of administration were
issued to William Van Steinwehr, next-of-kin of dece-
dent, at the Probate Court of Hamilton County, in
Ohio aforesaid. On the 25th day of June, in the same

year, petitioner became the attorney, in fact, of said administrator. A copy of the letters of administration of William Van Steinwehr, duly certified, was annexed to the petition, and also a power of attorney by said administrator, by the name of William Van Steinwehr, without adding the word " administrator" or describing himself as such, to said Hanover, appointing him his attorney, to sign all petitions, &c., about the estate of the decedent, and perform and execute for him, in his name, all things which he should judge expedient in connection with the said estate, with power of substitution and revocation. The power of attorney was signed " William Van Steinwehr, administrator of the estate of Adolph Van Steinwehr, deceased." On these papers, the attorney in fact, applied for letters of administration under section 31, 2 *Revised Statutes*, 75. On this application, letters were granted to said Hanover, without his producing the renunciation of the public administrator of the city of New York, or citing him on the application. The latter moved to vacate the letters.

THE SURROGATE. — The statute provides that where a person, not an inhabitant of this state, shall die leaving assets therein, if letters are not applied for by a relative entitled and competent, and it shall appear that letters of administration on the estate have been granted by competent authority in any other state of the United States, then the person so appointed, on production of such letters, shall be entitled to letters in preference to creditors or any other person, except the public administrator of the city of New York. It

is objected that the power of attorney in question is defective, as it does not purport to be given in a representative capacity, and that the addition to his signature, "administrator of the estate," &c., does not make it a power granted by him as the representative of the estate, but that it is a mere personal power. I am inclined to the opinion that this criticism is not substantial, and does not present a valid objection, for it is evident from the terms of the power that it is conferred by him in a representative capacity, for purposes which can only be served in that representative capacity; but the power seems to me to be very general, and does not point to the particular thing which it is intended to authorize him to perform, for the power would be fully executed by the attorney filing a petition in the name of his principal, praying for letters to issue to such principal, and, indeed, that would seem to be the scope and purpose of the power, and if it were intended that this attorney should receive letters himself, the power should have directed the mind to that particular fact.

The more serious obstacle, however, to the validity of the letters issued is found in the language of 2 *Rev. Stat.*, 75, § 31, whereby the public administrator of the city of New York is given preference over a foreign administrator, and, having such preference, he is entitled to be cited on such an application, or his *renunciation* should be presented. The section under consideration provides that the foreign administrator, on producing his letters, shall be entitled to letters, which would seem, by its language, to confine the right to a foreign administrator, personally; but

in St. Jurjo v. Dunscombe (2 *Bradf.*, 105,) it is stated that, as a matter of comity, the custom has prevailed in this court, time out of mind, to grant letters to the attorney of the foreign executor, and I am disposed to recognize and follow that custom.

By chapter 403 of the Laws of 1863, which is an act in relation to the grant of letters of administration upon the estate of non-residents, the first section provides that whenever administration of the estate of an intestate, domiciled without this state, shall have been granted, &c., in such foreign state, letters of administration may be granted within this state, by the proper surrogate, to the administrator or other person entitled to the possession of the personal estate in the state or country of such domicil, or to any person or persons authorized by him or them to receive the same, upon such security as the surrogate may require, on consideration of the probable amount of debts due or owing by decedent to residents of this state, to be proved to his satisfaction; and section second, in the same act, requires the surrogate, before granting letters, to cause notice to be published of the application, &c., for six months.

The third section provides that the surrogate shall examine the party applying, or his agent, as to the creditors, and if any be found, they shall be cited as provided therein.

On my attention being called to these two provisions of the statute, I was inclined to regard chapter 403 above cited as a repeal, by implication of the section of the *Revised Statutes* above cited, for the reason that it seemed to me substantially to deal with the

same subject matter, and to provide a different mode of proceeding in such cases; but on examination of sixth edition of the *Revised Statutes*, I find that both provisions are inserted as subsisting under the head of "Letters of Administration," and in the same article, without note or comment, showing evidently that the editor regarded them as subsisting, and not inconsistent. A repeal of statutes by implication is not favored by the law, and where a later and former statute can stand together, both will stand, unless the former is expressly repealed, or the legislature's intention to repeal is very manifest. I am inclined to regard the sections referred to as standing together, under the rule laid down in People *v.* Palmer (52 *N. Y.*, 83). It is quite clear that the letters in this matter were improvidently granted.

Some question has arisen as to the second and third sections of chapter 403, and it has come to my knowledge that the practice of this court has been, when applications have been made under the first section of that act, to grant letters without the notice and publication provided by the second section, or examination as to creditors, provided in the third section, in cases where the applicant gives the security, as in ordinary cases, for the full amount of the personal assets of the estate in this state, regarding such notice, advertisements and examination as substituted for the security ordinarily required; but while it is not impossible that they were so intended, yet there is no evidence of that fact to be found in the act itself, and I am of the opinion that when any application shall be made for letters under that chapter, the notice, publication and

examination are required, and that I have no right to interpolate a substitute.

Section thirty-one of the *Revised Statutes* (above cited) makes provision for the issuing of letters to the foreign administrator in preference to any other person, except the public administrator of the city of New York; but it makes no provision in respect to the security which shall be required, nor for the issuing of letters to the attorney in fact of such foreign administrator, and the presumption therefore is, that when such letters shall be issued under that section, the usual security is required, while chapter 403 does provide that the letters may be granted to the person authorized by a former executor to receive the same, and that the security shall be in the discretion of the surrogate to be based upon the amount of debts due and owing by decedent to resident creditors. If therefore application be made under the thirty-first section (above cited), it must be on notice to the public administrator or on his renunciation, and on the usual security. If the foreign administrator, or his attorney, shall desire to give the reduced security under the act of 1863, they must comply with the other conditions of the act in respect to the notice, publication, and examination as to creditors, &c.

The letters must be revoked.