THE PEOPLE OF THE STATE OF NEW YORK ex rel. ORRIN W. SAGE, RESPONDENT, v. GEORGE W. SCHUYLER, AUDITOR OF THE CANAL DEPARTMENT, APPELLANT.

*Illegal contract by the canal commissioners — what not a ratification thereof, by the Legislature.*

December 18, 1872, the canal commissioners, without authority, let a contract for the erection of a dam. Subsequently one of the canal commissioners drew two drafts upon the auditor for payments due on the work, both of which were protested. Thereafter an arrangement was made, whereby the relator advanced money to the contractor, and received the certificates issued to him; the final certificate being issued in July, 1874. The commissioners in charge reported to the Legislature of 1873 that the contract had been made, and in the report to the Legislature of 1875 the amount of the certificates was reported as an item of public expenditure. In 1875 an act was passed appropriating $107,004.03 for the payment of certificates issued for work on the canals, and $12,973.08 for interest thereon. A clerk in the auditor's office testified that he prepared the budget for this appropriation, and that the aggregate of the certificates issued as aforesaid to the said contractor, and the interest thereon, were included in it.
*Held*, that these facts did not show that the Legislature had knowledge of the illegality of the contract under which the work was done, and that the act of 1875 did not amount to a ratification of it, or authorize payment of the certificates. (BOARDMAN, J., dissenting.)

APPEAL from a judgment, entered upon the report of a referee, in favor of the relator, granting a peremptory mandamus against the defendant, as auditor of the canal department, requiring him to audit and allow a claim of the relator against the State.

In 1855 the State made a permanent appropriation of the waters of Cazenovia lake and of its outlet Chittenango creek to the purpose of feeding the Erie canal. At that time there were

two dams on the creek, one near the outlet of the lake which belonged to the State, and the other below which belonged to private parties. The State also owned the Erieville reservoir, another feeder, the waters from which emptied into the Chittenango creek between the two dams. In 1864 the State placed in the lower dam a gate and kept a man in charge of it. In 1865 this dam was carried away by a flood and was rebuilt by the owners, the State replacing the gate. In 1872 it was again carried away. This time the owners refused to rebuild. Thereupon the canal board, deeming it necessary and proper for the interest of the State that this dam should be rebuilt, by resolution passed May 8, 1872, adopted plans and estimates for its construction, and authorized the canal commissioners to advertise the work for ten days and let the same, provided the parties whose water rights were affected should make a release satisfactory to the attorney-general. The canal commissioners accordingly advertised for proposals and announced that they would receive bids until May 21, 1872. On May 22, 1872, the canal board passed a resolution reconsidering the resolution of May eighth, and as reconsidered laying the same on the table. Nothing further was done until December 18, 1872, when the canal commissioners, assuming to act under chapter 343 of the Laws of 1872, let the work to Henry J. Mowry, accepting a bid put in by him when the work was first advertised. On this letting the commissioners did not advertise at all. A release had been executed by the mill owners in May, but it had not been approved by the attorney-general. A contract was made and the construction of the dam was begun, according to a plan which had not been submitted to the canal board, and differing in some respects from the one they had adopted. In March, 1873, Mowry obtained from one of the canal commissioners a draft upon the auditor of the canal department for $714, and in April, 1873, one for $1,292, being the amounts of the first and second estimates of the engineer. These drafts were protested for non-payment. Afterwards they were surrendered and certificates issued in their place. The contractor having refused to go further with the work until provision was made for payment therefor, the canal commissioner in charge applied to the relator to advance the necessary money, until provision could be made for

the payment thereof by the Legislature. Thereupon the relator and Parsons, the mill owner, obligated themselves to do so upon the assignment to them of the certificates issued or to be issued to the contractor. Work was resumed and the dam finished, and in July, 1874, a final certificate for $7,734.61 was issued to the contractor. All three certificates were duly assigned to the relator and Parsons, and Parsons afterwards assigned his interest to the relator. The commissioner in charge in his annual report for 1872, to the Legislature of 1873, stated the carrying away of the dam, that its maintenance was necessary for the State, and that the canal commissioners had contracted to have it built. In the annual report for 1874, to the Legislature of 1875, the aggregate amount of the three certificates issued was reported as an item of public expenditure. In 1875 the Legislature passed an act (chap. 263, Laws of 1875) appropriating moneys for the canal department, and among other things appropriating for the payment of certificates issued for work done on the Erie canal, etc., between January 1, 1874 and March 15, 1875, the sum of $107,004.03, and for interest on these and on other items named, the sum of $12,973.08. The witness Savage, a clerk in the auditor's office, testifies that he made up the budget for the appropriations included in this act, and that the aggregate of the three certificates issued to the contractor, together with the proper interest thereon, was included in the above amounts. In 1876 the Legislature passed an act (chap. 425, Laws of 1876), which it is claimed repealed the act of 1875.

*A. Schoonmaker* (Attorney General) and *Isaac D. Garfield,* for the appellant.

*E. P. More* and *E. Countryman,* for the respondent.

LEARNED, P. J.:

While I agree with much of the opinion of my brother BOARD-MAN, there is one important respect as to which I must disagree, and that is on the question of ratification by the act of 1875. The very ground of any ratification (by the Legislature or by any other party) must be *knowledge.*

The action in the auditor's office does not show knowledge in the Legislature. And especially it is not proved that the Legislature had knowledge of the illegality of these contracts. (*People ex rel. Wasson* v. *Schuyler*, 69 N. Y., 242.) If the language of the act expressly included the certificates the case would be quite different. But it does not. And therefore, when the act is claimed to be a ratification only, it should appear plainly that the Legislature, with knowledge of the circumstances respecting these certificates, must have intended by this appropriation in general language to ratify them. I do not think that such knowledge is shown, and I am of the opinion, therefore, that the judgment on the referee's report should be reversed, with costs.

Tappan, J., concurred.

Boardman, J., dissenting.

It may be assumed that the original contract made for the building of this dam in December, 1872, was not valid or binding upon the State. The fourteenth finding of fact by the learned referee, however, gives some color to the claim that such contract was recognized and ratified so far as possible by the canal board in February, 1873, while the work was in progress. The conclusion reached makes it unnecessary to discuss that question.

By the act of 1875, chapter 263, appropriations were made to pay awards of the canal board, the board of canal commissioners, and certificates for work done on the Erie canal as well as interest upon such sums. The evidence shows that the certificates in controversy were included in the estimates for which such appropriations were made. The facts were known to the canal board and the canal commissioners. The necessity for the work for State purposes had been recognized by the canal board in 1873, and in 1872 by the report to the Legislature of the canal commissioner in charge. Again, in 1874 the amount of these certificates was reported to the Legislature of 1875 as items of public expenditure. The law of 1875 was thereupon drawn up for the auditor for the very purpose, among others, of paying these certificates. In the face of these facts, it cannot be contended there was not a legislative ratification of these expenditures and a recognition of

the State's obligation to pay them. (*Smith* v. *People*, 47 N. Y., 330; *People* v. *Lord; People* v. *Stephens; People* v. *Leahy*, MSS. opinions, Ct. of App.) Nor is it open to doubt that the Legislature have the power so to ratify, recognize and pay for work of which the State has had the use and benefit. (*People* ·v. *Lord*, Ct. of App., Jan., 1878; 17 Alb. L. J., 273; *People* v. *Stephens*, 51 How., 235; *People ex rel Williams* v. *Dayton*, 55 N. Y., 367; *Brown* v. *Mayor of N. Y.*, 63 id., 239; *Nelson* v. *Mayor*, etc. *of N. Y.* id., 535.)

Was the act of 1875 repealed by the act of 1876, chapter 425 ? It is certainly not repealed in terms, and repeals by implication are not favored. If the two statutes can both stand without being inconsistent or in conflict, courts will sustain both. (*People ex rel. Kingsland* v. *Palmer*, 52 N. Y., 83.) The object of the act of 1876 was " to provide for the completion or cancellation of *all pending contracts* for new work upon, and extraordinary repairs of, the canals" and making appropriations therefor. The contract before us was not a "pending contract," and therefore did not come within the purpose of the law. The act of 1875 was not passed to pay for new work or extraordinary repairs, but to pay for work already done and completed. Any other construction would involve extraordinary and improbable consequences. There is nothing in the provisions of the act of 1876 in conflict with the view here taken. If it be conceded that the work done was necessary for the profitable use of the Erie canal, and that the right to withhold payment arises from irregularities in the manner of making the contract and causing the work to be done, then an equitable, if not legal, obligation was imposed upon the State to pay for such work, of which, since 1874, it has had the use and benefit. This constitutes a sufficient consideration, not only to justify, but to require a recognition and payment of the debt.

Nothing is seen in the exceptions taken upon the trial which ought in our judgment to change the result or furnish a reason for granting a new trial. There is no evidence that the work was not well done. It appears that the State officers have acted in good faith, and with reference to the best interests of the State as they believed. The price to be paid for the work is reasonable and the work was necessary. There is no pretence of any fraud

or corruption. The State has since used and enjoyed the benefits of the work.

For the reasons assigned, and for others more clearly and fully stated in the opinion of the learned referee, I dissent from the opinion of my brethren, and think this judgment should be affirmed, with costs.

Judgment reversed, with costs, against the relator.