THE PEOPLE OF THE STATE OF NEW YORK ex rel.
THOMAS J. KILLEEN v. CLARENCE B. ANGLE,
Secretary of the New York State Civil Service Com-
mission, and JOHN JAY and HENRY A. RICHMOND,
Comprising the New York Civil Service Commission.

*Civil service law — the superintendent of the canals is not bound to make appointments
from the lists certified to him by the civil service commissioners — Constitution,
art. 5, sec. 3 .*

Under the Constitution and laws of this State the superintendent of public works
is not bound to make appointments of any persons employed in the care and
management of the canals from the eligible lists certified to him by the civil
service commissioners, as persons found qualified for the place upon a compe-
titive examination under the statute and rules relating to persons in the civil
service of the State. (Daniels, J., dissenting.)

To make the superintendent of public works in this State, in his appointments,
subservient to the civil service law, would be a clear violation of the provisions
of section 3 of article 5 of the Constitution, creating the superintendent of public
works, which confers upon him the absolute power of appointment and
removal of certain persons employed in the care and management of the canals.
(Daniels, J., dissenting.)

Application for an order directing that a writ of *mandamus*
issue to ... ...re the New York State Civil Service Commission to
admit the relator to examination as to his fitness for the office of
clerk to the collector of canal statistics.

*Everett P. Wheeler*, for the relator.

*Denis O'Brien*, for the defendants.

Van Brunt, P. J.:

The question presented by this application for decision seems to
be as follows: Is the superintendent of public works of this State
bound, under the Constitution and laws of this State, to make
appointments of any persons employed in the care and management
of the canals from the eligible lists certified to him by the civil
service commission as persons found qualified for the place upon a
competitive examination under the statute and rules relating to
persons in the civil service of the State.

Upon the part of the defendants it is urged that among the powers conferred by the Constitution of the State upon the superintendent of public works is the power to appoint certain persons employed in the care and management of the canals, who shall be subject to suspension and removal by him; and that the power of appointment conferred by the Constitution is necessarily interfered with and abridged if the superintendent is limited in his power of appointment to one of the three names certified to him by the commission; or if a soldier appears upon the list, if his power of appointment is limited to this single person pursuant to · the requirements of the civil service laws, and that his power of suspension and removal is also abridged or interfered with if, pursuant to the requirements of the statute, he shall be required to retain an appointee for three months in order to give him an opportunity of demonstrating that he is fitted for the position.

It seems to us that to make the superintendent of public works of this State, in his appointments, subservient to the civil service law would be a clear violation of the provisions of the Constitution creating the superintendent of public works, which confers upon such superintendent the absolute power of appointment and removal of certain persons employed in the care and management of the canals. It was evidently the intention of the Constitution that the superintendent of public works should be solely responsible for the care and management of the canals; that he should, therefore, have an undivided authority to choose his own employees.   Prior to the adoption of this amendment to the Constitution in 1876, in regard to the superintendent of public works, the power therein conferred upon him was shared and the responsibility divided between various boards and offices.   Great abuses had arisen, it was believed, because of this division of power and responsibility; and the object of this amendment was to concentrate this power in and fix the responsibility upon the single head of a department, to be known as the superintendent of public works.   If the legislature, either directly or indirectly, have any right to interfere with the superintendent of public works, either in the performance of the duties devolved upon him by the Constitution or in the selection of all his appointees, then the object of this amendment of the Constitution has failed to effectuate the purpose for which it was enacted.

The power given to the superintendent is absolute. No language could confer the power in broader terms. The superintendent alone is to appoint, suspend or remove. He is to determine qualifications. As he is to be solely responsible for the work done, he is not to be allowed to shelter himself behind the excuse that he is not responsible because he could not select his own employees. By the rules of the civil service board the superintendent is bound to select one from three names specified by the civil service commission; or, if a soldier happened to have passed the examination, then his name alone can be certified; the superintendent's choice is limited to a single individual, and thus the appointing power becomes the civil service commission, who, if the applicant is a soldier, may certify only one person for appointment, and upon this certificate the superintendent must appoint. The superintendent must simply conform to their selection, and has no will of his own, nor can he exercise any judgment or discretion in respect to the matter. This would seem to take away from the superintendent the very power which the people by the amendment to the Constitution intended to confer upon him.

It is claimed, however, by the counsel for the relator, that the operation of the civil service law, instead of limiting the scope of selection, largely increased it, because the appointing officer himself may not only send for examination persons known to him or recommended to him, but the examination is open to all, and that it is not now necessary that the applicant for office should personally know the appointing officer, or that he should be pressed upon him by politics or personal friends.

In this statement, however, the counsel seems to have forgotten that, under the rules of the civil service commission, of all this host the superintendent is limited in his selection to only three, and in some cases to one, of the qualifications of whom he is not permitted to judge, but must appoint because certified to him by the civil service commission. The power of selection would thus be committed by this law to another body, and the superintendent would be simply the recording officer of their edicts. It may be true that by the operation of the civil service law, public officers are relieved in many instances from great pressure and importunity in the making

of appointments, but this fact in no way operates to restrict the provisions of the Constitution relating to the powers of the superintendent of public works, nor can this circumstance modify what was the plain intent of the people in the adoption of the amendment of 1876 to the Constitution referred to.

It also appears manifest that his power of removal and suspension is trenched upon, if he is obliged to retain a candidate selected upon probation for three months. In fact, his power of appointment is limited and his power of suspension and removal restricted both by the provisions of the statute and by the rules and regulations adopted pursuant to the statute. But it is contended, on behalf of the relator, that the sixth section of article 5 of the Constitution must be read in connection with section 3. This section reads as follows: "The powers and duties of the respective boards, and of the several officers in this article mentioned, shall be such as now are or hereafter may be prescribed by law." Our attention is also called to a clause in section 18 of article 3 of the Constitution, which, after naming a large number of subjects on which the legislature shall pass general laws, provides as follows: "And for all other cases which, in its judgment, may be provided for by general laws," and these provisions, it is claimed, give the legislature discretion to pass general laws on every subject save those expressly excepted by the Constitution.

If this construction is to prevail, then it seems to have been an idle ceremony upon the part of the people, in their amendment of 1876, to have given constitutional powers to the superintendent of public works if such powers can be taken away by legislative action.

The grant of power to the superintendent was extraordinary and unusual. It became part of the organic law of the land, such organic law it having been always supposed up to the present time being beyond the reach of mere legislative action. The rule that amendments and additions to the Constitution must be read in connection with the whole instrument, and that they do not supersede any provision to which they are not repugnant, is undoubtedly well established, but the application of this rule in no way aids the position of the relator.

It is also a primary rule of constitutional and statutory construction that the intent of the makers of the Constitution or law must

prevail in its construction, and that for the purpose of ascertaining such intention we may consider the cause or necessity for adopting the Constitution or passing the statute as well as other circumstances. (*People ex rel. Wood* v. *Lacombe* 99 N. Y., 43 and cases there cited.)

It has already been seen that the object of the amendment of the Constitution was to concentrate power and responsibility; to put the question of canal care and management beyond legislative control. With this object in view, constitutional powers were given to the superintendent of public works, and the necessary presumption is that, when power is conferred by constitutional 'provisions, with no explicit power of legislative interference, it was intended that there should be no legislative interference with such constitutional powers. The fact that the same instrument contains a general provision as to the powers and duties of the respective boards and of the several officers mentioned in the Constitution, that they shall be the same as they then were or hereafter shall be prescribed by law, in no way militates against this view, even if both clauses were adopted at the same time. But where the provision giving the constitutional power is interpolated by way of amendment, it is manifest that it was not the intention to confer this constitutional power as mere matter of form, which would be the case were it subject to legislative action.

It is further to be noticed that a large number of State officers and boards were provided for in this article, including the managers of the canal, and not a word was inserted therein as originally adopted with reference to the powers and duties of any of these officers or boards. The legislature was then given such control of the powers and duties of these boards by said section 6 as was necessary. But when the section creating the office of superintendent of public works was inserted a different policy was pursued and his powers and duties were regulated by constitutional provision, a deviation so marked from the previous condition of constitutional enactment that it must have been adopted for some good and sufficient reason. In support of the claim of the relator, attention is called to the case of *Capen* v. *Foster* (12 Pick., 485), in which the constitutionality of laws for the registration of voters and for ascertaining the qualifications of persons entitled to vote were sustained. The Constitu-

tion of Massachusetts fixed the qualifications of voters but did not prescribe how these qualifications should be ascertained. By fixing qualifications to the exercise of the elective franchise, it was abso-. lutely necessary that the qualification should be ascertained in some way, and the Constitution not having prescribed the method it was clearly within the power of the legislature to formulate the method.

In the case at bar no qualifications are affixed to the power of appointment conferred upon the superintendent of public works. It is absolute and unrestricted. The provisions of article 2, section 2, paragraph 2 of the Constitution of the United States is, in no respect, similar to the one under consideration. It is as follows : " Congress may by law vest the appointment of such inferior officers as they think proper in the president alone, in courts of law, or in heads of departments."

By this provision the whole subject is submitted to the legislative action of congress, and being so submitted the subject was under their control. If the provision had given the president alone the power of appointment and removal, then the cases would have been similar, but when the subject by the Constitution is referred to the legislative branch of the government for action, it necessarily confers power to act in the way which best accords with public interests.

By section 2 of article 6 of the Constitution the Court of Appeals is authorized to appoint its reporter, clerk and attendants. It was the evident intent of the framers of the Constitution that the court should be untrammeled in their selection. The appointees were persons coming into immediate contact with the court, charged with important duties and over whom it was necessary that the court should have absolute and immediate control. This the Constitution gives and this the legislature cannot take away. The provision is precisely analogous to that relating to the superintendent of public works. The application of the relator must, therefore, be denied.

BRADY, J., concurred.

BRADY, J. :

My brethren have elaborately discussed the question presented upon this appeal, but differ in their construction of the constitutional provision involved. Section 3 of article 5, which created the

office of superintendent of public works, declares that he shall be " charged with " the execution of all laws relating to the repairs and navigation of the canals and also of those relating to the construction and improvement of the canals, except so far as the execution of the laws relating to such construction or improvement shall be confided to the State engineer and surveyor. And further, that, subject to the control of the legislature, he shall make the rules and regulations for the navigation or use of the canals. This imposes upon him imperative duties and personal responsibilities as indicated by the words " charged with." The word " charge " is defined to be : " To put upon as a task or duty ; to overload ; to burden ; to commission for a certain purpose ; to intrust ; to lay on or impose as a load or burden ; as a task or duty, or trust." (Worcester — Webster). His status is thus defined, and in order as well to enable him to discharge these duties as to prevent his shifting the responsibility for any failure in respect to them upon subordinates appointed by another person, he was empowered to select his assistants and others subject to suspension or removal by him whenever in his judgment the public interest should so require. The section does not by any phrase suggest the control of the legislature over him except as to the rules and regulations for the navigation or use of the canals, which he is required to make. *Expressio unius est exclusio alterius.* By section 5 of the same article it is provided, it is true, that the powers and duties of the several officers mentioned in the article shall be " such as now are or hereafter may be prescribed by law." This must relate to other powers or duties that might be prescribed by law and not expressly conferred by the Constitution itself. The power to appoint and suspend or remove had been conferred and no legislation on that subject was necessary. It was a gift from the higher law. It was an existing authority and therefore one of " such as now are "—prescribed by the organic law if, indeed, the provision has any relation to the power of appointment given him by section 3.

This power was in strict harmony with the intention to put upon him personally a faithful discharge of all the duties of his office, to accomplish which he was permitted to select the persons to assist him and to suspend or remove them, if necessary, for the public interest. I think the power is absolute and cannot, therefore, be

invaded by legislation. If it were otherwise, the superintendent would be held responsible for the defects of persons not chosen by him, in the sense of the Constitution, from the State at large, but from a few selected by others, and practically appointed by them, though indirectly. He cannot select from the applicants, but from those of them certified to him, and who might or might not be fit for the position acquired, notwithstanding the certificate given.

I concur with the presiding justice.

Daniels, J. (dissenting):

The application of the relator was made under the authority of chapter 354 of the Laws of 1883, and the acts since passed amendatory thereof, and the rules adopted pursuant to this authority by the governor, with the aid of the civil service commissioners, to carry the provisions of the law into effect. By a stipulation entered into between the attorney-general and the attorneys for the relator it has been agreed that the writ is not to be issued unless the court shall hold and decide that the superintendent of public works is bound, under the Constitution and laws of the State, to make appointments to the office or position of collector of canal statistics from the eligible list furnished and certified to him by the civil service commissioners, of persons found qualified for the place upon a competitive examination under the statute, and only relating to persons in the civil service of the State. If the superintendent is not bound by law to make the appointments from such list, then the relator hereby expressly waives his demand or claim for a *mandamus* in this case.

This stipulation has reduced the substantial controversy, therefore, to the question whether the superintendent is required to comply with the statutes relating to the civil service of the State in the appointments made by him to the offices or positions of collectors of canal statistics. That the statutes, as well as the rules adopted under them, include those positions is not a controverted point in the case. Neither can it be, for by sections 6 and 7 of the act of 1883, all subordinate places, clerkships and offices in the public service of the State are to be filled in the manner prescribed by the statutes. The only exceptions which have been made are those of elective officers, laborers or workmen, and persons whose nomina-

tion for official employment is subject to the confirmation of the senate. The office of collector of canal statistics is not within either of these exceptions, and to become qualified for such an appointment under the provisions made by the statutes, a preceding examination of the competency and capacity of the applicant has been rendered necessary. By the rules adopted under the statutes three qualified persons are directed to be nominated, or reported to the appointing authority, out of which a selection may be made, and the preference in making the selection has been secured to honorably discharged soldiers and sailors who served in the army or navy of the United States in the late war. The appointing power, however, is not obliged in the first instance to make an absolute appointment, but to select from the persons reported to him a proper individual, in his judgment, for the appointment, who is to serve probationarily for the period of three months before any absolute appointment shall be made. If, during that time, the selection proves to be for any reason unsatisfactory, then provision has been made for certifying other competent persons to the appointing official for his selection in like manner of a probationary candidate for the office. And that is to be from time to time repeated until a suitable selection shall be made by and in the discretion of the appointing officer.

It is not denied but that the legislature possessed ample authority for the enactment of the statutes for supplying official appointments to subordinate positions, when those positions may have been created by or under the authority of the legislature. But the authority of the legislature has been denied, and the statutes themselves are objected to as inapplicable, when by the Constitution of the State the power of appointment to the subordinate office or position has been vested in any officer or tribunal. And section 3 of article 5 of the Constitution is relied upon as having vested in the superintendent of public works this unqualified authority to select and appoint the subordinates in his own department. This section of the article was first made and adopted as a part of the Constitution in 1876. Before that the officials who were charged with the control and management of the canals of the State were three canal commissioners. And by the change made in 1876 their office was abolished and a superintendent of public works was

directed to be appointed, who was "charged with the execution of all laws relating to the repair and navigation of the canals, and also of those relating to the construction and improvement of the canals, except so far as the execution of the laws relating to such construction or improvement shall be confided to the state engineer and surveyor." It has been further directed in this section, that he should appoint not more than three assistant superintendents, whose duties should be prescribed by him, subject to modification by the legislature. And then follows the general direction, upon the construction and effect of which this application is dependent, that "all other persons employed in the care and management of the canals, except collectors of tolls and those in the department of the State engineer and surveyor, shall be appointed by the superintendent of public works and be subject to suspension or removal by him." This power of appointment and removal is urged by way of answer to the application, to be unqualified and absolute, beyond the power, regulation or interference in any respect of the legislature of the State. But this amended section was not inserted in or added to the Constitution to stand entirely unqualified and by itself. It was made a part of article 5 of the Constitution, and placed in the same relation to it as the preceding section, whose place it has taken, was, providing for the offices of the canal commissioners, which were abrogated and discontinued by the adoption of this section. And placing it in that position in the Constitution is a circumstance indicating the intention to have been that it should be subject to legislative authority, as the preceding provision was whose place it has now been made to occupy. If that had not been the intention of the amendment, it is fair to presume that it would have been otherwise inserted in the Constitution. And that might very well have been done by assigning to it some other position where its authority or directions would remain free from all additional qualifications. But that was not the disposition which was made of this amendment, but it was adopted as a substitute for the preceding section, occupying the same position in article 5 of the Constitution. And being adopted and placed in that position it was subjected to the qualification contained in section 6 of the same article. No intention has been evinced, either by the object or language of the amendment, to relieve it from this qualification. But by

placing it in the relation which it has been made to bear to section 6 of the same article, it appears to have been designed that it should be qualified by what has been contained in that section, and that has provided that "the powers and duties of the several boards and of the several officers in this article mentioned, shall be such as now are, or hereafter may be, prescribed by law." This section is in no manner repugnant to anything contained in the amendment, for this amendment has not provided that in the exercise of this authority the superintendent of public works shall be free from the control of all future legislation. Neither has it been declared, or provided by it, that the superintendent in making his appointments shall be at liberty to select the appointees from the citizens of the State at large. It has neither expressly nor by implication declared that the exercise of the appointing power vested in him should be free from or not subject to the qualifications which might afterwards be annexed to its use by judicious legislation. And as the section was not adopted in the form creating this unqualified authority, it must have been the intention to subject this power of appointment to such legislation as might afterwards be prescribed by law. Both the amendment and the other provisions of the Constitution are required to be considered and construed together, and harmonized so far as that may be practically accomplished. And this construction not only harmonizes with the general provisions contained in section 6 of the same article, but nothing has been inserted in the amendment evincing the design to have been that the latter section should not remain applicable to the amendment. And that amendments to the Constitution after their adoption shall be held and considered to be affected by the other provisions contained in it, was held to be true in *Gilbert Elevated Company* v. *Anderson* (3 Abb. N. C., 434). It was there said by ALLEN, J. : " So, too, the amendments and additions, as adopted from time to time, must be read, interpreted and applied as parts of the entire instrument, and not as isolated provisions. They do not supersede or annul the prior enactments of the Constitution, except as one clause or paragraph is expressly substituted for another." (Id., 452.) And giving all the authority to this amendment mentioned and described in it, by section 6 of the same article, the exercise of the appointing power could still be regulated by legislation.

In the same year section 4 of this article was amended by providing for the appointment of a superintendent of State prisons, who was in like manner given authority to appoint certain subordinates; and by substituting it for, and giving it the place of, the preceding section of the article and thereby subordinating it to section 6, it was made further manifest that the performance of the powers and duties was intended to be made subject to the action of the legislature. These amendments were proposed by the legislature, whose members, in adopting them, must be presumed to have been familiar with and to have had the other sections of the article in mind at the time, and the effect they might be expected to have upon the construction of the amendments themselves; and from placing the amendments in this part of the article, good reason exists for believing, as a matter of fact, that they were intended to be qualified by what has been provided for by this succeeding sixth section.

No convincing reason is perceived for exempting these appointments from the control of this legislation. Its object has not been to subvert or divest the power of appointment created by the amendments, but it has been directed to secure such a management or use of the power of appointment as may render it more efficient, competent and promotive of the public welfare than it otherwise might be. The object of this legislation has been to provide a mode for first testing and ascertaining the competency and qualifications of the persons intending to be applicants for appointments to these subordinate offices or positions mentioned in the statutes, before any selection for either of them shall be made. It has been no part of the purpose of this legislation, or of the rules adopted in pursuance of it, to divest either the superintendent of public works or the superintendent of the State prisons from exercising their power of appointment, but its sole object has been to supply the appointing officers with candidates for selection and appointment, found upon examination to be possessed of qualifications rendering them entirely competent for the discharge of the duties of the offices for which they may be selected. The superintendent still remains vested with the unqualified power of appointment, but the selection of his subordinates has been limited to the persons who, upon examination, are in this way first found to be qualified for

the positions. These amendments, as well as the other portions of the Constitution, are to be construed according to the import of the language employed in framing them. The same practical construction is to be given to them as the courts are in the habit of applying to the construction of statutory provisions. The object is to extract the meaning of the language which has been employed. (*People ex rel. Jackson v. Potter*, 47 N. Y., 375, 379.) And this rule has been followed in the Federal courts when the construction of provisions of the Constitution of the United States have been presented for decision. And it has been held that the " words are to be taken in their natural and obvious sense, and not in a sense unreasonably restricted or enlarged." (*Martin v. Hunter's Lessee*, 1 Wheaton, 304, 326; *Prigg v. Pennsylvania*, 16 Peters, 539, 610, 611; *Gibbons v. Ogden*, 9 Wheaton, 1, 188, 189.)

The entire legislative authority of the State has been vested by the Constitution in the legislature. (*Bank of Chenango v. Brown*, 26 N. Y., 467, 469.) And no act or acts of the legislature are to be disregarded and declared void as in conflict with constitutional authority unless a clear and substantial inconsistency shall be found to justify their condemnation. (*Matter of Bayard*, 25 Hun, 546, 547, 548.) There must be a clear repugnancy between the two, as there must be between earlier and later legislative acts, to entitle the later act to supersede or repeal the earlier. *Hankins v. Mayor, etc.* (64 N. Y., 19, 22), and *Matter of Thirty-fourth Street R. R. Co.* (102 id., 343), where it was said in the course of the opinion of ANDREWS, J., that " It needs no citation of authorities to sustain the postulate that, except as restrained by the Constitution, the legislative power is untrammeled and supreme, and that a constitutional provision which withdraws from the cognizance of the legislature a particular subject, or which qualifies or regulates the exercise of legislative power in respect to a particular incident of that subject, leaves all other matters and incidents under its control." (Id., 350.) And this was again repeated by ALLEN, J., in *Gilbert Elevated Company v. Anderson* (supra), in which the principle was declared and enjoined that " In the interpretation of the Constitution, all restrictions upon the legislative power in matters affecting the general public affairs of the State — such matters as come within the general scope of ordinary legislation, having respect

to the general interests and the governmental policy of the State —
are to be strictly construed, and are not to be extended by implica-
tion or inference to matters not clearly within the terms of the
restricted clauses. It will not be presumed that the people
intended to derogate from the general powers of the legislature
farther than they have in express terms declared. All legislative
power is expressly committed to the senate and assembly, and any
limitation of or withdrawal of such power must be express; and if
ambiguous language is employed in the imposition of restrictions,
all doubts must be solved in favor of the general powers of the
legislature, and the limitations must be confined within the terms
employed." (*Elevated R. R. Co.* v. *Anderson, supra ;* 3 Abb. N. C.,
452.) And the assertion of this general principle certainly met
with no denial on the part of either of the members of the court,
but it was apparently sanctioned and approved; and it is not giving
it too much effect to say that it maintains the legislation now in
controversy. Both these statutes and this amendment of the Con-
stitution, providing for the appointment and authority of a superin-
tendent of public works, can well stand and subsist together, for
the superintendent will still have the power of appointment which the
amendment has created, and the power of removal, also, even though
he may be obliged, in exercising the former, to make his selections
for subordinate positions from the persons certified to him to be com-
petent and qualified for these appointments. There is no such
hostility or conflict between the two as, under the well settled rules
adopted in this manner by the courts, will justify the conclusion
that these statutes cannot be applied to the selection of these sub-
ordinates by the superintendent of public works, without abridging
his constitutional authority.

An argument opposed to this construction has been made by the
attorney general from that part of section 2 of article 6 of the Con-
stitution which provides that the Court of Appeals shall have the
appointment, with power of removal, of its reporter and clerk, and
all such attendants as may be necessary. But this power of appoint-
ment has not been qualified, as the power now in controversy has,
by section 6 of article 5 of the Constitution. It has been given
in absolute and unqualified terms to the judges of the Court of
Appeals, and has not been made subject to such regulations as may

be prescribed by law, as the appointing power of the superintendent of public works has.   The same answer is as complete and effectual to the effect of the case of *Menges* v. *City of Albany* (56 N. Y., 374); for the power of appointing the commissioners of appraisement was given to the court by the Constitution, without subjecting it to any legislative qualification, and for that reason the legislature could not restrain or interfere with the exercise of that authority. That, however, which has been vested in the superintendent of public works is not of this unqualified description, but it has been created subject to the future action of the legislature, so far as that action shall not divest him of his power of appointment, but merely regulate its exercise in such a manner as shall be deemed by the legislature to be more consistent and certain to secure the appointment of qualified and competent subordinates.   That is all that the legislature has undertaken to provide for.   It is to regulate and prescribe the qualifications of the persons who are to be appointed, and that regulation has been expected and designed to secure the appointment of a better qualified class of incumbents than might be selected by the superintendent without the aid and assistance of the preceding examination the law has required to be made.   So far as its enactments have extended, it has not abridged the authority of the superintendent, but it has supplied the means which, in the judgment of the legislature and executive, are best adapted for certainly securing a competent and faithful class of incumbents.

It appears that one of the members of the civil service commission resigned his office before the application for this writ was made, and no person has been appointed by the governor to fill the vacancy.   And it has been contended by the attorney general that the two remaining commissioners are incapable of executing the provisions of the law required to be observed and carried into effect by their board.   But this argument appears to be opposed to section 15 of chapter 354 of the Laws of 1883, by which it has been enacted that, "A majority of the members of said board shall constitute a quorum, but a less number may adjourn from day to day."   One object of this provision was to vest the majority with the power, when there should be no third commissioner or when he should be unable to act with them, to execute the authority of the statute. And having been invested with that power it has not been abro-

gated by the resignation of the other member of the commission, and the omission to the present time of supplying his office by appointment. This general subject has been further provided for by the Revised Statutes. It was there enacted that "Whenever any power, authority or duty is confided by law to three or more persons, and whenever three or more persons or officers are authorized or required by law to perform any act, such act may be done and such power, authority or duty may be exercised and performed by a majority of such persons or officers upon a meeting of all the persons or officers so intrusted or empowered, unless special provision is otherwise made; and whenever a duty has been or shall be enjoined by law upon three or more persons or officers, and one or more of them shall have died, or have become mentally incapacitated to act, or shall refuse or neglect to attend a meeting of such persons upon reasonable personal notice thereof, then the action of a majority of the whole number appointed shall be binding and effectual for all the purposes for which they were appointed, unless special provision is otherwise made in existing laws." (3 R. S. [6th ed.], 862, § 29.) And this case is within the spirit and intent of this section, for after the resignation of the third commissioner there was no person to be invited to meet with the other two, or, in fact, to meet with them, and their power to act accordingly became unqualified. And this authority also has the sanction of *People ex rel. Kingsland* v. *Palmer* (52 N. Y., 83, 87, 88.) There is nothing in the nature of the power vested in the commissioners necessarily requiring on their part the action and concurrence of more than a majority of the members of the board. The examinations provided for may be completely made under their authority, and they are entirely competent to certify the result to the officers authorized to make selections and appointments. And as the statutes which have been considered do not appear to be in conflict with the constitutional amendment, the motion for the *mandamus* should be allowed to prevail.

Application denied.