THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEON VAN HECK, Appellant, v. THE NEW YORK CATHOLIC PROTECTORY, Respondent.

*Power of a magistrate to commit children to charitable institutions — Penal Code, sec. 291 — Power of the New York Catholic Protectory to detain them during minority— 1863, chap. 448 — 1882, chap. 410, secs. 1618–1624 — Relative priority of provisions of the "consolidation act" and of the Penal Code.*

Subdivision 5 of section 291 of the Penal Code, providing that a court or magistrate may commit children, convicted of a violation of that act, "to any charitable, reformatory or other institution authorized by law to receive and take charge of minors, or may make any disposition of the child such as now is or hereafter may be authorized in the cases of vagrants, truants, paupers or disorderly persons," does not authorize the commitment of a child, generally, to any charitable, reformatory or other institution, without regard to the authority of such institution to receive and continue the custody of the person committed, and so as to abrogate or supersede the provisions of law prescribing the circumstances or conditions under which such institutions are respectively authorized to receive and retain the custody of minors.

It confers no power to commit to any institution of the character named, except in conformity to its lawfully authorized power to receive. (Brady, J., dissenting.)

The New York Catholic Protectory is only authorized to receive and retain in its custody, during their minority, children committed to it, after all the provisions of the acts (1863, chap. 448; 1882, chap. 410, §§ 1618–1624), requiring notice to be given to the child's parent, guardian or person with whom it resides and a hearing to be had, have been fully complied with.

If within the twenty days specified in the said sections no notice is given, or hearing had, the Protectory has no right to transfer the child to its asylum and there detain it.

*Semble,* that although it was provided in section 2143 of the "consolidation act" (chap. 410 of 1882) that the Penal Code was to have the same effect as if it had been passed subsequently to the consolidation act, yet it was not intended thereby, that those provisions of the consolidation act relating to the same subjects considered in the Penal Code should be repealed or annulled by anything contained in the Penal Code.

APPEAL from an order of the Special Term, dismissing writs of *habeas corpus* and *certiorari.*

*F. R. Coudert* and *Paul Fuller,* for the appellant.

*D. Quinn* and *E. T. Gerry,* for the respondent.

DAVIS, P. J. :

The appeal in this case brings up solely the question of the right of the New York Catholic Protectory to retain the custody, during his minority, of John Van Heck, a child nine years of age, of the relator Leon Van Heck, who was, on the 5th of November, 1884, arrested for begging in the streets of New York and brought before a police justice of the city, under the provisions of section 291 of the Penal Code, and by him committed to the custody of the protectory. The returns both to the writ of *habeas corpus* and to the *certiorari* sufficiently show that the child was lawfully arrested while engaged in the act of begging, receiving and soliciting alms on Centre street, in this city, and that his conviction before the magistrate of that offense was regular in form. The Special Term was right, therefore, in holding that under the decisions cited, the court is not at liberty to go behind the conviction and re-try the question of fact upon which it was made. (*People ex rel. Perkerson* v. *St. Dominick,* 34 Hun, 463 ; *People ex rel. Eck* v. *American Female Guardian Society,* 34 Hun, 633 ; *Matter of Moses,* 13 Abb. N. C., 196.)

The only question remaining in the case is whether the child was committed to the Catholic Protectory in such form and manner

that that institution is authorized to retain his custody against the claim of his father during his minority. It was considered by the court below that this question was disposed of by the fifth subdivision of section 291 of the Penal Code, which provides that such court or magistrate may commit the child to any charitable reformatory or other institution authorized by law to receive and take charge of minors, or may make any disposition of the child such as is now or hereafter may be authorized in cases of vagrants, truants, paupers or disorderly persons. It seems to have been supposed that this provision authorizes the commitment, generally, to any charitable reformatory, or other institution, in such manner as to abrogate or supersede the provisions of law prescribing the circumstances or conditions on which such institutions are respectively authorized to receive and retain the custody of minors.

We think this to be a mistaken view of the intent and effect of the provisions of the act in question. That provision does not, in our judgment, authorize the commitment of a child arrested under section 291, to any charitable reformatory or other institution generally, without regard to the authority under the law of such institution to receive and continue the custody of the person committed. On the contrary, it confers no power to commit to an institution of the character named, except in conformity to its lawfully authorized power to receive.

It becomes necessary therefore to inquire into the authority of the Catholic Protectory to receive the child of the relator under the commitment of the magistrate in this case and retain his custody during his minority. The authority of the New York Catholic Protectory to receive and retain children committed under such circumstances is conferred by its charter (chap. 448 of the Laws of 1863) and by certain sections of the Consolidation Act. (Laws of 1882, chap. 410, §§ 1618–1624 inclusive.)

Under these provisions it is not sufficient that it shall appear that the child is found begging or receiving or soliciting alms in the manner forbidden by section 291 of the Penal Code to authorize the commitment of such child to the Catholic Protectory. because the protectory is only authorized, as will be seen by section 8 of its charter and section 1618 of the Consolidation Act, to receive such child in custody where it shall *further appear* " to

the satisfaction of such magistrate or court by competent testimony or by the examination of the child that by reason of the neglect or vicious habits of the parents or other lawful guardian of such child, it is a proper object for the care of such corporation."

Section 1618 further requires that the warrant of commitment shall set forth in substance that these facts have appeared to the satisfaction of the magistrate, in which case they may commit the child to the said corporation at its house of reception, to be detained there until discharged or removed therefrom in the manner thereinafter provided.

Section 1619 provides that after such commitment be made, the magistrate or court making the same shall deliver to a policeman of the city, especially detailed for that service, a notice in writing addressed to the father of such child, if its father be living and resident in the city, and if not, then to its mother if she be living and so resident, and if there be no father or mother of such child resident within the city then addressed to the lawful guardian of such child, if any, or to the person with whom, according to the examination of the child, and the testimony, if any, received by such magistrate or court, such child shall reside, in which notice the party to whom the same is addressed shall be informed of the commitment of such child to the house of reception of said corporation, and notified that unless taken therefrom in the manner prescribed by law within twenty days after the service of such notice, the child will be committed to the asylum of the corporation. Section 1620 prescribes the mode of service of such notice, and by section 1621 the parent or person to whom such notice is addressed is at liberty to appear within twenty days before the magistrate or court, and show that the circumstances under which the child shall have been found have not been occasioned by his habitual neglect or misconduct, and then it is the duty of the magistrate, by an order in writing addressed to the superintendent of the house of reception, to direct such superintendent to deliver such child to the custody of the party named in such order, who shall thereupon be entitled to take such child from such house of reception. Section 1622 declares that if said proof shall not be produced within the twenty days, it shall be the duty of the magistrate or court by whom the child shall have been committed to the house of reception, to make

and transmit to the superintendent thereof a notice in writing of that fact, and thereupon the child shall be removed to the asylum of the corporation.

None of these several provisions seem to have been complied with by the committing magistrate in this case, and inasmuch as the authority of the protectory to receive and keep in custody is limited to cases where compliance with those requirements appears, the commitment to that institution must be regarded as unauthorized. There is nothing in section 291 of the Penal Code which increases the authority of the protectory to receive and take charge of minors beyond that conferred upon it by statute. On the contrary, it limits the power of the magistrate in designating the charitable reformatory or other institution as the place of commitment to one authorized by law to receive and take charge of the child; and power is not given to commit to any such institution, whether authorized by law to receive and take charge of minors or not. The warrant in this case committed the child to the house of reception of the New York Catholic Protectory, but it failed to show the case to be one upon which that house is authorized to receive the child, and none of the subsequent steps were taken, as required by law, to authorize commitment to the asylum after the expiration of twenty days.

It appears that more than twenty days had elapsed at the time the writs were sued out, and no notice whatsoever having been given to the father as required by law, the right of the protectory to transfer the child from the house of reception to the asylum, and to retain its custody, did not lawfully exist. Those steps were both jurisdictional and important, because when properly taken they operate to authorize the protectory to retain the custody of the child during its entire minority, and to wholly supersede the authority of the parent over the child for that entire period. Where such consequences are to follow a commitment it is important that the requirements of law, under which alone the protectory can acquire so large and exclusive an authority over children committed to its custody, should be carefully observed and followed. We think the court below erred in holding that the conviction of the magistrate in this case was sufficient to justify the detention of the child against the claim of his father, the relator.

132   PEOPLE ex rel. VAN HECK v. CATH. PROTECTORY.

First Department, October Term, 1885.

The order should therefore be reversed and an order made directing the delivery of the custody of the child to the relator.

Daniels, J., concurred.

Brady, J. (dissenting):

The New York Catholic Protectory is authorized by section 5 of chapter 448 of the act of 1863, incorporating it, to take and receive children between seven and fourteen years of age, who may be committed to its care as idle, truant, vicious or homeless, by order of any magistrate in the city of New York empowered by law to make committal of such children for any cause.

Section 1618 of chapter 410 of the Laws of 1882, provides for the committal of any child above the age of seven and under fourteen to the protectory, on the allegation that it was found in any street, highway or public place in this city in the circumstances of want and suffering or abandonment, exposure or neglect, or of beggary specified or defined in section 1463 of the act of which that section is a part.

Section 1463 provides that if any child shall be found in a state of want or suffering, or being abandoned or improperly exposed, or neglected by its parents or such other person as may have it in charge, or begging for alms or soliciting charity from door to door, or in any street, highway or public place within the city, the recorder or any police justice shall, on complaint and competent proof, commit the child to the alms-house, etc.

Section 291 of the Penal Code, which was in full force and effect at the time of the passage of the act of 1882, just mentioned, provides that a male child actually or apparently under the age of sixteen, or a female child actually or apparently under the age of fourteen, who is found begging or receiving or soliciting alms in any manner or under any pretense, may be committed to any charitable, reformatory or other institution authorized by law to receive and take charge of minors, or may be disposed of as the child could be in cases of vagrants, truants, paupers or disorderly persons.

Subsequently, by chapter 46 of the Laws of 1884, the last mentioned section was amended by enlarging the causes for which commitments might be made, but retaining the provision that the commitment could be made to any charitable, reformatory or other institution authorized by law to receive and take charge of minors,

and also the right to make any disposition of the child which was then or thereafter might be authorized in cases of vagrants, truants, paupers or disorderly persons. These statutes seem to embrace two classes of children — those who are abandoned, improperly exposed or neglected by their parents, or found in a state of want and suffering, and therefore begging for alms by soliciting for charity from door to door; and those who are professional beggars, either from vicious habit and inclination or from employment for that purpose. And hence the two statutes may well stand together. It must be further observed that the language of section 291 (*supra*) is broad and comprehensive. " Such court or magistrate may commit the child to any charitable, reformatory or other institution authorized by law " to receive and take charge of minors. The New York Catholic Protectory is authorized by law to receive and take charge of minors. But the section further provides, " or make any disposition of the child which now is or hereafter may be authorized in cases of vagrants, truants, paupers or disorderly persons; " and, as we have seen by the act of 1863 (chap. 448), incorporating the New York Catholic Protectory (to which the name was changed by the act passed in 1871, chap. 83), to that corporation may be committed the care of children as idle, truant, vicious or homeless. So that it would seem to be within the authority of the committing magistrate, if a child be actually found begging, under the provisions of section 291 of the Penal Code (which are clearly in force yet), to dispose of it as a truant; and if that power existed, then the right to send to the protectory seems to be undoubted.

I have been unable, from an examination of this appeal, to arrive at the conclusion that the right of the protectory to receive children is limited to the cases, only, contemplated by the act of 1882, the provisions of which have been examined and considered by the presiding justice, and therefore I must dissent.

Upon a reargument of this case, the following opinions were delivered:

Daniels, J. :

Under the act, chapter 448 of the Laws of 1863, the child, the right to the custody of which is in controversy, could, by the order of the magistrate, first to be made, be detained in custody no longer than

134   PEOPLE ex rel. VAN HECK v. CATH. PROTECTORY.

FIRST DEPARTMENT, OCTOBER TERM, 1885.

"until discharged or removed therefrom in the manner" therein-after provided. The magistrate was then required immediately after making such order, to deliver to a policeman of the city a notice in writing addressed to the father of the child, or if there should be no father, then to the mother, or in case the child had no father or mother residing within the city, then to the lawful guardian of such child, or if it had no guai lian then to the person with whom the child, appeared by the examination or testimony, to reside, informing the person to whom it should be addressed of the commitment of the child, and that unless taken from the place to which it had been committed, in the manner prescribed by law, within twenty days after the service of such notice the child would be committed to the asylum of the corporation.   If no such person could be found, then a certificate of that fact containing a description of the child was required to be posted conspicuously in the police sta-tion-house nearest the alleged residence of the child.   The person to whom such notice was directed to be given, was within the twenty days entitled to appear before the magistrate and make proof that the condition in which the child was found was not occasioned by the habitual neglect or misconduct of the parents, or lawful guardian, or custodian, of such child, and thereupon it was made the duty of the magistrate to direct the superintendent of the house of correc-tion to which it had been ordered, to deliver the child to the custody of the party named in such direction.   But if no such proof was made within the twenty days, then it was made the duty of the magistrate to make and transmit to the superintendent of the house of reception a notice in writing to that effect, and thereupon the child was directed to be removed from the house of reception to the asylum of the corporation.   (Laws 1863, chap. 448, pp. 771-2.)   According to these provisions the house of reception was made a place of temporary detention, extending only so long as would afford time for the other directions contained in the statute to be carried into effect.   If they were not complied with, then after the time had expired for complying with them, the detention of the child would be unlawful.   And it was only by compliance with such directions that the detention could be made permanent by removing the child from the house of reception to the asylum pursuant to the notice of the magistrate.

These provisions of the statute, prescribing the proceedings to be taken after the committal of the child to the house of protection under the order of the magistrate, were neither complied with nor in any way observed. And if these provisions continued, and were at the time of the commitment of the child in force, it was unlawfully detained in the asylum and should have been discharged under the writ of *habeas corpus*. They were in form as well as language made a part of the consolidation act of the city of New York, enacted in 1882. (Chap. 410, Laws of 1882, §§ 1618–1623.) They were thus re-enacted after the enactment of the Penal Code, which by its own direction is to be deemed to have been enacted on the 4th of January, 1881, to take effect on the 1st of May, 1882. (Penal Code, § 727.) It is true that by the last paragraph of section 2143 of the consolidation act, the Penal Code is declared to have the same effect as if it were in fact passed after the consolidation act. But it could not have been intended by this provision that these other provisions inserted upon this subject in the consolidation act should be repealed or annulled by anything contained in the Penal Code. This act was enacted when the Penal Code was within the knowledge and was in the mind of the legislature. And these sections would not have been made a part of the consolidation act if it had been intended that the previously enacted Penal Code should annul or repeal them. They were considerately made a part of the consolidation act intending that they should be observed and enforced. And the circumstance that this act was in this way subordinated to the Penal Code could not have been designed to defeat that intention. The only provision in the Penal Code relied upon as attended with a different result, is that which has been made by subdivision five of section 291. By that the magistrate before whom the child may be brought has been authorized to commit him or her " to any charitable reformatory or other institution authorized by law to receive and take charge of minors." But from what has been already said it could not have been intended by this direction and authority that the commitment should be absolute or permanent, where the law as it had been then enacted directed that it should be in effect temporary and conditional as that had been done by the act of 1863. This direction does not so conflict with these provisions in the act of 1863, and now contained in the consolidation act, as to

136 PEOPLE ex rel. VAN HECK v. CATH. PROTECTORY.

First Department, October Term, 1885.

produce a repeal by implication. It has not directed that the commitment shall be absolute in the first instance, but merely that the magistrate may commit without declaring the form or time for which the commitment may be made, and consequently that must have been intended to be controlled by other statutes in force upon the subject. Both these provisions may well stand and be enforced together. The magistrate may commit and his commitment may at the same time remain conditional upon the notice being given of the commitment to the parent, guardian or other person with whom the child previously resided, and if neither could be found with the posting of the notice in the police station, and upon the result of the hearing to be had in case of an appearance before the magistrate. The provision contained in the Penal Code proceeds upon this understanding of its effect; for the commitment is to be to an institution authorized by law to receive and take charge of minors. The person committed is accordingly to be sent to the institution in subordination to the law in this manner referred to. It was not designed to be changed or disregarded, but the law authorizing the institution to receive the child, was to be observed. The commitment was intended to be warranted so far and no farther than the authority of law here referred to sanctioned and provided for it. The institution to be mentioned in it was to be one which a law, other than the Penal Code, had authorized to receive minor children, and it was in obedience to that authority that the commitment was allowed to be made. By no construction can this provision of the Penal Code repeal the provisions of the act of 1863, inserted in and made a part of the consolidation act of 1882; for one act of the legislature is not allowed to repeal another by implication when both can be maintained and enforced together as these several statutory directions very clearly can be. (*Hankins* v. *Mayor*, 64 N. Y., 18, 22.) There is not the least impropriety, as the commitment is to be to an institution authorized by law to receive minor children, in concluding that the directions of that law shall be observed in making the commitment and in the following proceedings directed to render it absolute. The provisions contained in the consolidation act are local and special, while that made by this subdivision of section 291 of the Penal Code is general, and it is a rule of construction that "a special statute providing for a particular case or applicable to a

particular locality, is not repealed by a statute general in its terms and application, unless the intention of the legislature to repeal or alter the special law is manifest, although the terms of the general act would, if taken strictly and but for the special law, include the case provided for by it." (*Van Denburgh* v. *Village of Greenbush*, 66 N. Y., 1, 3, 4.) Under this rule, also, the special provisions on this subject should still be maintained. They were enacted to secure an important object. It was to prevent parents, guardians and other persons. from being summarily deprived of their children without affording them an opportunity to be heard. The right to the custody and control of a child is an important one secured and carefully guarded by the law, and its forfeiture is only permitted when that may be required for the protection, security and well being of the child, and the law has wisely if not necessarily provided for a hearing before a forfeiture of this right has been sanctioned. It is not probable that the legislature intended by the enactment of the Penal Code to abridge or impair this right of custody, but rather that it designed that it should remain under the protection of the laws as they had been enacted to secure this end. Certainly without a clear indication of the intention that this right should be divested without a hearing of the person entitled to assert it, the law should not be held or construed to allow that to be done. But doubtful or ambiguous language should be so construed as to permit the continuance of this right.

As already has been directed the order should be reversed and an order entered directing the delivery of this child to the relator. But while this has been found to be the necessary effect of the law no doubt is intended to be intimated that by an observance of the requirements of the law, which was omitted in this case, the authority exists for committing the custody of such children as are included within the statute to the care, custody and guardianship of this institution.

Davis, P. J. :

As the result of the opinion of Daniels, J., conforms with that of a majority of the court on the former argument, I have no reason to doubt its correctness and therefore concur in it.

Order reversed ; order entered directing the delivery of the child to the relator.

BRADY, J. (dissenting):

In this matter I dissent from the views expressed by Justice DANIELS as to the forms of proceeding, but not as to the power to commit to the respondents care children properly brought within the operation of either of the statutes to which he refers. I regard the acts in relation to this city and to the provisions of the Penal Code as separate and distinct, one being special and limited and the other general, each giving to the magistrate authority to proceed under each when the charge is brought within the terms of either. Whether this presents confused and confusing legislation, either or both, or gives practicable and valuable provisions matters not as long as it exists. It cannot be disregarded.

Order reversed; order entered directing the delivery of the child to the relator.