### In the matter of ANN LYNCH.

The court of chancery has the custody and control of the person as well as of the estate of an habitual drunkard, and can exercise that control by means of a committee, as in the case of a lunatic.

The committee of an habitual drunkard has the right, subject only to the superintending control of the court, to decide as to the proper residence of the drunkard ; and he is responsible for the consequences of his neglect to take proper care of the person of such drunkard. And it is the duty of the court to aid and protect the committee in the proper exercise of this right, and to give him directions on the subject when necessary.

Where a third person, without the consent and against the wishes of the committee, has the custody of, or harbors the habitual drunkard, the committee should apply to the court ex parte for an order that such person deliver the drunkard up to the committee, or cease from harboring him ; and if such order is disobeyed, the party will be punished for a contempt of court.

March 17.    THIS was an appeal from a decision of the vice chancellor of the first circuit, denying an application made on the part of the committee of the person and estate of Ann Lynch, to obtain the custody of her person ; and to prevent J. Kinsey, at whose house she was, from harboring her against the wishes of the committee.

*H. S. Mackay,* for the committee.

*T. Phoenix,* for Kinsey and Ann Lynch.

THE CHANCELLOR.    The appeal in this case presents an important question as to the rights and duties of the committee of an habitual drunkard ; and as to the power and control which this court has over the persons of that unfortunate class of our fellow citizens whose unnatural appetite for intoxicating liquors has rendered them incompetent to manage their property, or to regulate their own conduct.    Ann Lynch, a widow lady about sixty-five years of age, who by the death of her husband came into the possession of a very considerable personal property in addition to her dower in his real estate, was, upon the execution of a commission issued by the

1835.

In the matter of Lynch.

vice chancellor, found to be incapable of conducting her own affairs, by reason of habitual drunkenness. And upon a subsequent application to the vice chancellor in her behalf, he confirmed the finding of the jury, and refused to award a feigned issue ; being satisfied, no doubt, that the case was so clear as to make the trial of the issue a useless expense to this unfortunate woman and her estate. From that decision there has been no appeal. I must therefore, for the purposes of this application, reject the attempt which is now made to traverse the finding of the jury, by affidavits. Whenever the court is satisfied she has so far reformed that there is no danger of a relapse, the committee will be discharged, and her estate will be restored to her. But until such an order is made, she is considered in law as wholly incapable of doing any act by which her estate can be in any manner affected, or of even contracting debts for the necessaries of life. The committee has obtained an order, by which a very liberal allowance is made for the support of herself and her two infant grand-children—the only persons who appear to have any claims for support out of her estate. He has also provided a suitable place for her residence, or one which would have been suitable if she had been willing to go there to reside. She refuses, however, to submit to the control of the committee ; and J. Kinsey, who has very improperly undertaken to interfere in this matter, is harboring her and locking up her property from the committee, contrary to his wishes, and in defiance of the legitimate control which this court has over her person and estate through its officer.

It appears, from the opinion of the vice chancellor, that he refused the application of the committee, because he doubted the power of the court to interfere and compel Mrs. Lynch to reside at the place selected for her by the committee. In this I think he erred. Previous to the revised statutes, the court had no control over the person of an habitual drunkard, but only over his estate ; the power of the chancellor, by the original act of 1821, (*Laws of* 1821, *p.* 99, § 1,) being confined, in terms, to the estate. But by the recent revision of the statutes, the powers of this court in relation to the *persons*, as well

as the estates of habitual drunkards, are put precisely upon the same ground as its powers over the persons and estates of idiots and lunatics. This change in the statute was undoubtedly founded in wisdom, and in a spirit of kindness to this unfortunate portion of the community ; as the protection of property is of but little consequence in comparison with the salvation of its deluded owners, who may properly be considered as morally deranged. It is therefore of the utmost importance to them, that the powerful shield of this court should be interposed, not only for the protection of their property against those who would knowingly destroy both soul and body for the purpose of rioting upon the spoils of the victims of their cupidity, but also to remove them, if possible, from the thousand temptations which others, either intentionally or thoughtlessly, may place in their way. That the statute gives to the court a perfect control over the person of an habitual drunkard, which it can exercise through the medium of a committee, I think there is no reasonable ground to doubt. It declares, in the first place, that the chancellor shall have the *care and custody* of all ideots, lunatics, persons of unsound mind, and persons who shall be incapable of conducting their own affairs in consequence of habitual drunkenness, and of their real and personal estates ; and he is then directed to provide for their safe-keeping and maintenance, out of their real and personal estates. (2 *R. S.* 52, § 1.) Thus putting the persons of the habitual drunkard and of the lunatic, both as to custody and safe-keeping, upon the same footing in every respect.

The control, therefore, which this court may by its committee exercise over the person of one who is found incapable of conducting his own affairs in consequence of habitual drunkenness, is the same which it may exercise over an infant, or an ideot, or a lunatic. The guardian or committe is alone to decide, subject however to the superintending control of the court, as to the proper place in which the infant, non compos, or habitual drunkard, shall reside ; as he is liable for the consequences of a neglect to take proper care of the person committed to his care and custody. And it is the duty of the court to lend its aid to protect him in the proper exercise of

that right; and to give him directions on the subject when necessary. In *Hall* v. *Hall*, (3 *Atk. Rep.* 721,) Lord Hardwicke compelled a young gentleman, who had left Eton school contrary to the directions of his guardian, to return thither. So in *Freeman's case*, (1 *Strange*, 168,) Lord Chancellor Macclesfield, upon the application of the guardian, who had directed his ward to go to Cambridge University, but who in disobedience of his orders went to Oxford, sent a messenger to compel him to go to Cambridge. And the ward having again returned to Oxford, another messenger of the court was sent to take him to Cambridge, and to keep him there. And in the case of *Cranmer*, a lunatic, (12 *Ves. Rep.* 455,) upon a complaint to Lord Chancellor Erskine, that the morning after the execution of the commission, the lunatic had been conveyed from his house in Essex to London by Margaret Winton, who was probably his housekeeper, and that he could not be found, an order was made directing her, or any other person in whose custody Cranmer might be, to deliver him to the committee of his person. The Lord Chancellor said a habeas corpus was not necessary; and that if the order was not obeyed, he should commit the party. And in *Lord Wenman's case*, (1 *P. Wms.* 702,) where the wife, after the making of an order for producing the husband on the execution of a commission, had been with him and assisted in his removal from place to place, she was committed to the fleet for a contempt of the court; Lord Macclesfield observing, that where there was such a presumption of lunacy, the wife, though otherwise under the power of the husband, might well be supposed to have him under her power. It is also a contempt of the court to marry a person the custody of whom the court of chancery has granted to a committee; for which the parties concerned in it may be committed. (*See Ash's case, Prec. in Ch.* 203. *Smart* v. *Taylor*, 9 *Mod. Rep.* 98.)

The proper course of proceeding, however, in a case like the present appears to be to apply to the court, in the first instance, for an ex parte order that the person in whose custody the non compos or habitual drunkard is, or who harbors her against the wishes of the committee, to deliver her up to the committee, or to cease from harboring her; and to desist from

interfering with the committee in the exercise of his power and control over her person. And if that order is disobeyed the parties so disobeying may be punished as for a contempt. In this case, therefore, although Kinsey was clearly wrong in harboring Mrs. Lynch, against the wishes of the committee, yet, as he has probably acted under a mistake as to the rights of Mrs. Lynch and the duty of the committee, in consequence of this preliminary order not having been obtained and served upon him, I do not think it would be proper to charge him with the costs of these proceedings, if he is now willing to deliver up this unfortunate lady to the care and custody of her legal guardian.

Although the power of this court over the persons of habitual drunkards is thus complete, it ought not to be exercised in such a manner as to deprive them of their freedom unnecessarily. The power should be used only to protect them from injuring themselves, or from being injured by others ; to remove them from temptation, and from the society of vicious companions, and if possible effect a reformation ; and to restore them to their friends, and to the possession and control of their property, as good and virtuous members of the community. Such a reformation can only be effected by kind and humane treatment. And whenever the committee deems coercive measures necessary, the safer course is for him to apply to the court for its advice and direction.

In the present case, I am not satisfied that it would conduce to the reformation or the happiness of this old lady, or be useful to her relatives, to place her under the care of those against whom she entertains a hostility, for doing that which it was their duty to do under the circumstances of this case. And as her property is sufficiently large to bear the expense of placing her in a situation where she can be entirely removed from temptation and will at the same time be treated with the utmost humanity and kindness, I shall direct that she be delivered up to her committee, and that he immediately place her under the care of Dr. White, at his institution at Hudson, and provide for her comfortable support at that place, until the further order of the vice chancellor of the first circuit in the premises. If Doctor White is unable to take her at his in-

stitution, she must be placed by the committee in the Lunatic Asylum at New-York; where she must be kept from all liquors which can intoxicate.

The order appealed from must be reversed; and the committee is to be permitted to retain his costs on this appeal, and the costs of the application to the court below, out of the estate in his hands. An order must be entered in conformity to this decision; subject however to be modified by the vice chancellor from time to time, as he may judge expedient, as to the place where Mrs. Lynch shall be kept, and as to the mode of her treatment, and as to the discharge of the committee and the restoration of her property, whenever he shall think her so far reformed that there will be no danger of a relapse. The order must also direct the proceedings to be remitted to the vice chancellor, so that this decision may be carried into effect under his direction.