AGRICULTURAL INSURANCE COMPANY, Appellant, v. HENRY BARNARD, Impleaded, etc., Respondent.

Where, upon appeal to the General Term from a judgment in favor of plaintiffs, in an action tried by the court, the record does not contain the evidence, but the appeal is heard and determined solely upon the findings of fact and law, in order to succeed it is incumbent upon the appellant to show that the trial court could not, in any view of the facts found, properly order a judgment for plaintiff.

Upon application, under the act in reference to the care and custody of the insane, by the committee of an insane person, for leave to mortgage his real estate for the payment of his debts (§ 17, tit. 1, chap. 446, Laws of 1874); it is not necessary that the committee shall execute a bond for moneys which shall come into his hands ; it is within the discretion of the court whether to require a bond or not.

The requirement that in case of a sale, the sale shall be reported to the court on the oath of the committee and confirmed by the court before a conveyance is executed, does not apply in case of a mortgage.

*It seems* that no such bond or report is required in proceedings to mortgage the property for the support or maintenance of the insane person. (§§ 6, 7, 9.)

As by the said act (§ 30, tit. 3) an insane person is made personally liable for his maintenance in the State lunatic asylum and for necessary expenses incurred by that institution in his behalf, its charges for such maintenance and expenses, accruing after the appointment of a committee, constitute a valid debt against him, and proceedings may properly be commenced under said act by the committee for leave to mortgage his property to pay such debt.

The filing of a petition showing the existence of a valid outstanding debt against the insane person, which requires the disposition of his real estate to enable his committee to pay, vests the court with jurisdiction of the

subject-matter under said act, and such jurisdiction is not divested by subsequent irregularities unless steps are taken in violation of some express provision of the act.

The general jurisdiction over the person and the property of the insane person given by the act (§ 1, tit. 2), is limited only by its special requirements.

A recital in an order made by the court in such proceedings, of the facts necessary to give jurisdiction is *prima facie*, and, if not affirmatively disproved, conclusive evidence of their existence.

Accordingly *held*, in an action to foreclose a mortgage executed by the committee of a lunatic, to raise money to pay the claim of said asylum for his support and maintenance in that institution, that, in the absence of a finding to support it, the court might not, for the purpose of subverting the order authorizing the execution of the mortgage, presume that there were other debts of the lunatic outstanding which were not provided for, or, as the order recited the necessary jurisdictional facts, that the petition presented to the court failed to show any of the facts necessary to give jurisdiction.

In applying to the court for leave to dispose of the property of an insane person, his committee represents him, and is not required to give him notice of the proceedings.

(Submitted June 28, 1884 ; decided October 7, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made January 24, 1882, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*A. H. Sawyer* for appellant. The proceedings to obtain authority to mortgage the real estate of the lunatic not having been made a part of the appeal papers, every intendment is in favor of their regularity and sufficiency ; and the court will be presumed to have had full and complete jurisdiction, unless the contrary clearly appears. (*Potter* v. *Merchants' B'k*, 28 N. Y. 641, 653 ; *Maples* v. *Mackey*, 89 id. 146 ; *Bosworth* v. *Vandewalker*, 53 id. 597; *Comstock* v. *Crawford*, 3 Wall. 396, 403.) The proceedings had in October, 1877, to obtain leave to mortgage the real estate of the lunatic were properly

brought under sections 17–20 of title 2 of chapter 446 of the Laws of 1874 and in full compliance therewith. (*Supervisors of Onondaga County* v. *Morgan*, 2 Keyes, 277 ; *Ferrin* v. *Myrick*, 41 N. Y. 315 ; *Austin* v. *Munro*, 47 id. 360 ; *Supervisors* v. *Morgan*, 2 Keyes, 284 ; 4 Abb. Dec. 341 ; *Dunford* v. *Weaver*, 84 N. Y. 445, 451 ; *People* v. *Snyder*, 41 id. 411.) If the petition contained all that was necessary and was a practical compliance with the statute, as the General Term has held, and was sufficient to confer jurisdiction upon the court to act in any manner whatever, then the court might thereafter make any order necessary to cure any subsequent defects, if any existed in the proceedings. ( *Ward* v. *Todd*, 103 U. S. 327 ; *Mohr* v. *Manierre*, 101 id. 417 ; *Ober* v. *Gallagher*, 93 id. 199 ; *Rogers* v. *McLean*, 34 id. 536 ; *Croghan* v. *Livingston*, 17 id. 218 ; *Produce B'k* v. *Morton*, 67 id. 199 ; *Bergen* v. *Wyckoff*, 84 id. 659 ; *Roth* v. *Schloss*, 6 Barb. 308 ; *Close* v. *Gillespey*, 3 Johns. 525 ; *Chichester* v. *Cande*, 3 Cow. 39 ; *Cutler* v. *Rathbone*, 1 Hill, 204.)

*E. C. James* for respondent.   The debt for which the mortgage in suit was given was not a debt of the lunatic.   The committee had no power to contract for him. (*Pearl* v. *McDowell*, 20 Am. Dec. 199 ; 3 J. J. Marsh. [Ky.] 658 ; Laws of 1874, chap. 446, tit. 11, § 2 ; Laws of 1877, chap. 446, tit. 2, §§ 6–8, 17–22.) The bond of the committee required by the statute on application to mortgage is indispensable for the protection of the lunatic, for the sureties upon the committee's original bond are not liable for moneys raised by mortgage. (*Muir* v. *Wilson*, Hopk. Ch. 512 ; *Swartout* v. *Oaks*, 52 Barb. 622 ; *In re Thorne*, 1 Edw. Ch. 507 ; *Battel* v. *Torrey*, 65 N. Y. 294 ; *In re Valentine*, 72 id. 184.) The petition must set forth the same particulars where an application is made to mortgage for maintenance, as where it is made to sell to pay debts ; and without such a petition, as well as the bond, the court did not obtain jurisdiction. ( *Van Nostrand* v. *Wright*, H. & D. Sup. 260 ; *Gore* v. *Walworth*, 15 Wend. 449 ; *Atkins* v. *Kinmore*, 20 id. 241 ; *Ackley*

v. *Dygert,* 33 Barb. 176; *In re Petit,* 2 Paige, 596; *Onder-donk* v. *Mott,* 34 Barb. 106; *Battell* v. *Torrey,* 65 N. Y. 294; *In re Valentine,* 72 id. 184.) The provisions of the statute must be complied with or the decision will be a nullity. (*Stillwell* v. *Swarthout,* 81 N. Y. 109 ; *Brown* v. *Mayor,* 3 Hun, 685–7; *People* v. *Police B'd,* 6 Abb. Pr. 164; *Cook* v. *Farren,* 34 Barb. 95.) It was not necessary to give notice to the lunatic of the proceedings before the referee. (3 R. S. [6th ed.] 55, §§ 13–17 ; Laws of 1874, chap. 446, title 2, § 18 ; Code of :Civ. Pro., §§ 126, 428, 2354; Constitution, art. 1, § 6 ; *Bloom* v. *Burdick,* 1 Hill, 130, 139 ; *Schreider* v. *McFarland,* 2 N. Y. 459 ; *Ackley* v. *Dygert,* 33 Barb. 177; *Rathbone* v. *Acker,* 18 id. 393; *McDermott* v. *B'd of Police,* 5 Abb. Pr. 422; *Stillwell* v. *Swarthout,* 81 N. Y. 109 ; *Sheldon* v. *Wright,* 5 id. 497 ; 7 Barb. 39 ; *Bloom* v. *Burdick,* 1 Hill, 130 ; *Schreider* v. *McFarland,* 2 N. Y. 459 ; *Bank* v. *Judson,* 8 id. 254 ; *Burnet* v. *Bookstaver,* 10 Hun, 481, 485 ; *Battell* v. *Torrey,* 65 N. Y. 294, 299.) No conveyance shall be executed until the sale or mortgage has been reported to the court, on the oath of the committee, and confirmed by the court. (Laws of 1874, chap. 446, title 2, §§ 11, 22, pp. 573–4 ; *Battell* v. *Torrey,* 65 N. Y. 284; *Stillwell* v. *Swarthout,* 81 id. 110.) Mere irregularities in judicial proceedings may be cured by amendments made *nunc pro tunc.* No court can get jurisdiction by amendment. (*Bangs* v. *McIntosh,* 23 Barb. 59, 601 ; *Hallett* v. *Righters,* 13 How. Pr. 43 ; *Kendall* v. *Washburn,* 14 id. 380 ; *Croghan* v. *Livingston,* 17 N. Y. 218, 220–2; *Battell* v. *Torrey,* 65 id. 294; *In re Valentine,* 72 id. 184; *Bissel* v. *Saxton,* 66 id. 55, 60.)

RUGER, Ch. J.   The action was brought to foreclose a mortgage for $1,500 dated October 19, 1877, given to the plaintiff on behalf of the defendants Barnard, by one Martin Thatcher, a committee duly appointed of Barnard's person and property, he having been duly adjudged a lunatic.

The record does not contain the evidence taken on the trial, and the appeal to the General Term was heard and determined solely upon the judgment-roll, and exceptions to the

findings of law by the trial court. In such a case, to succeed upon his appeal from a report in favor of the plaintiff, it is incumbent upon the defendant to show that the trial court could not, in any view of the facts found, properly order a judgment for plaintiff.

It appears, by the findings of the court below, that the mortgage was given in pursuance of an order obtained from the Supreme Court, authorizing its execution, for the purpose of paying the amount due the Utica Insane Asylum, for the maintenance and support of the lunatic, during a precedent period of time. That the lunatic was placed in the asylum by the committee, but it did not affirmatively appear that any express contract was made between the asylum and the committee for the lunatic's support. The objection by the defendant to the recovery in this action and the ground upon which the General Term, based its reversal of the judgment for plaintiff, was that no valid debt against the lunatic was created for his support to the asylum and that the proceedings taken to mortgage his real estate could not properly be taken under the provision authorizing money to be raised for the payment of debts, but should have been instituted under and have complied with the requirements of sections 6 and 7 of title 2, chapter 446 of the Laws of 1874, authorizing money to be raised for other purposes. The title referred to contemplates two proceedings, and two distinct grounds upon which the Supreme Court is authorized to order a disposition of the real estate of a lunatic, and each is governed by different modes of procedure. The causes stated in sections 6 and 7 are to raise money to provide for the support and maintenance of the lunatic and his family, the education of his children, or on account of other peculiar reasons or circumstances appearing to be sufficient to the court.

Section 17 authorizes the court to order the real estate to be sold, leased or mortgaged for the purpose of raising money to pay debts. The former proceeding requires the committee to execute a bond as security for the moneys which shall come into his hands at the time of making the application for an order, and the latter does not.

Under the provisions of the Revised Statutes it was left to the discretion of the court, to require a bond or not in the latter case, and that discretion is doubtless now vested in the court in a similar proceeding. Section 14, title 2, chapter 5, part 2, R. S.

In the case of a sale under either proceeding it is required, before a conveyance shall be executed, that such sale shall be reported to the court on the oath of the committee and confirmed by the court, but neither the letter of the statute, nor the object of the requirement applies to the execution of a mortgage authorized under section 17 of the act. It follows if the amount due the Utica asylum was a valid debt against the lunatic, and the proceeding taken to mortgage or dispose of his real estate was properly instituted and conducted under the sections of the statute authorizing a disposition of such property to pay debts, no material question arises, but that all of the steps necessary to enable the committee to execute a valid mortgage were taken in this case.

The ground upon which the General Term assumed to reverse the judgment of the trial court was that the claim of the asylum was simply an obligation of the committee, and not a valid debt against the lunatic, and that the proceedings authorizing the mortgage must, therefore, be supported, if at all, under the sixth and seventh sections of the act as already stated.

The court also held that the proceeding was invalid under these sections for the reasons that a bond was not executed and filed by the committee upon making the application for sale or other disposition as required by these sections, and also that no report was made to the court on such application before the execution of the conveyances as seemed to be required by section 11. We are unable to concur with the conclusion arrived at by that court on either of the grounds discussed by them: It appears from the findings of the Special Term, that an action had already been commenced by the Utica asylum to recover the debt owing to it for the support and maintenance of the lunatic.

By the express terms of the statute, section 30 of title 3 of

chapter 446, Laws of 1874, the lunatic is made personally liable for his maintenance to the asylum, and by section 17 of the same title the treasurer of that institution is authorized to sue and recover from the person liable, the amount due it for his necessary expenses and maintenance. There can therefore, be no question but that the sum claimed by the asylum constituted a valid debt against the lunatic at the time the proceedings were taken, the payment of which was capable of being enforced against his property independently of any action by the committee. (*Executors of Brasher* v. *Cortlandt*, 2 Johns. Ch. 400.) The existence of this debt constituted a sufficient ground under section 17, title 2 of the act, for the application to the court for leave to lease, mortgage and sell his real estate.

The filing of a petition which shows the existence of a valid outstanding debt of the lunatic, requiring the disposition of his real property to enable the committee to pay, vests the court with jurisdiction of the subject-matter under the act, and such jurisdiction would not be divested by subsequent irregularities in the proceeding unless they were taken in violation of some express provision of the statute. (*Bangs* v. *Duckinfield*, 18 N. Y. 592; *D'Ivernois* v. *Leavitt*, 8 Abb. Pr. 59; *Fisher* v. *Hepburn*, 48 N. Y. 50; *People, ex rel. Johnson*, v. *Nevins*, 1 Hill, 154; *Cole* v. *Hall*, 2 id. 625; *Matter of Empire City Bank*, 18 N. Y. 199; *Mohr* v. *Manierre*, 101 U. S. 418.) By section 1 of title 2 of the act in question, the Supreme Court is invested with general jurisdiction over the persons and property of lunatics and persons of unsound mind, and except as restrained and limited by the provisions of the statute, has power and authority to direct the place and method of their custody, and such disposition of their property as in its judgment is for the best interest of the lunatic. This jurisdiction is in no sense a limited jurisdiction to be exercised as in the case of special proceedings authorized by statute, but pertains to the general jurisdiction of the court, and is limited only by the special requirements of the statute.

The Supreme Court, having general jurisdiction over the

subject-matter of the application, had authority to proceed and make such an order in the premises as the statute authorized, however the facts may have been brought to its knowledge, and the recital in the order of the facts necessary to give the court jurisdiction is *prima facie*, and, if not affirmatively disproved, conclusive evidence of their existence when questioned in any collateral proceeding. (See authorities cited, *supra ;* *Wright* v. *Nostrand*, 94 N. Y. 31.)

The powers conferred are similar to those formerly vested in the Court of Chancery, and the care and custody of the person and property of lunatics and others of unsound mind, which was formerly exercised by the chancellor, is now confided to the Supreme Court. These powers are usually exercised by the court through a committee, and he acts as the officer of the court and is always subject to its control and direction. (*In the Matter of Ann Lynch*, 5 Paige, 120.)

The proceedings by which the defendant was adjudged a lunatic are found to have been regularly taken, and the committee to have been regularly appointed upon notice to the defendant, and the effect of such a proceeding is to divest the lunatic of the custody and control of his property, and to place it at the disposal of the court, in furtherance of the objects provided for in the statute. The committee is the proper person upon whom all notices intended for the lunatic, or affecting his rights of property are required to be served, and in applying to the court for leave to dispose of the property of the lunatic, he represents that person, and is not required to give notice of his proceedings to him. (*Mohr* v. *Manierre*, 101 U. S. 417.)

It appears affirmatively from the findings that no bond was given by the committee upon making application for leave to execute the mortgage in question, and this is the only fact so appearing that is made the ground of reversal by the court below. It, however, also affirmatively appears from the findings that the application of the committee was made under section 17 of the act for the sole and exclusive purpose of raising money to pay a debt owing by the lunatic.

The finding is as follows: " The said Thatcher as such committee thereupon, and ·on the 11th day of October, 1877, presented to this court a petition asking for leave to mortgage certain real estate of the lunatic, to raise $1,500 to pay said debt to the New York State Lunatic Asylum, incurred for the maintenance of said lunatic, and stated therein that he had no funds with which to pay said debt, and that the plaintiff would loan $1,500 for such purpose on said mortgage." The findings then, after reciting the reference of the petition to a referee to inquire and report, the service by mail of notice of the time and place of hearing on the said lunatic, and his several children, addressed to them at their respective places of residence, the hearing on the day appointed, and the report of the referee recommending the execution of the mortgage in question, proceeds: " Upon the said report of said referee an order was made by this court on the said 18th day of October, 1877, by which, among other things, the said Thatcher as such committee was authorized and empowered to execute a mortgage upon certain real estate of said lunatic for the said sum of $1,500 to provide for the payment of the debt to the asylum."

In the absence of any evidence or finding to support it the court cannot presume, for the purposes of subverting this order, that there were other debts of the lunatic outstanding unpaid which were not provided for in the order, or that the petition presented to the court failed to show the facts necessary to give the court jurisdiction to make the order in question.

We think, however, that the findings affirmatively show that all of the facts necessary to give the court jurisdiction were stated in the petition, and that the order was valid, and authorized the execution of the mortgage.

It follows that the order of the General Term should be reversed, and the judgment of the Special Term affirmed, with costs.

All concur.

Judgment accordingly.