---

### In re MORRIS' ESTATE.

*(Surrogate's Court, Cattaraugus County.　July 18, 1890.)*

EXECUTORS AND ADMINISTRATORS—ACCOUNTING—EXPENSES OF INSANE CHILD.

Laws N. Y. 1874, c. 446, tit. 6, provides for the confinement of the insane in an asylum; title 3, § 30, makes the insane person liable for his maintenance therein; and title 1, art. 1, §§ 12, 13, make the parent liable for the maintenance of the child where the property of the latter is insufficient. *Held* that, on the settlement of the accounts of an administratrix of her husband's estate, the surrogate had authority to allow sums paid by the administratrix for the maintenance of her adult daughter in an insane asylum, and for expenses incidental and preliminary to her confinement therein.

On application for judicial settlement of the accounts of the administratrix of the estate of Terry Morris, deceased.

*J. H. Waring,* for administratrix.　*J. L. Woodworth,* for B. Alta Morris.

SPRING, S.　The administratrix in this case is the mother of the contestant, who is a maiden lady about 23 years of age.　The administratrix has embodied in her account a statement of sums alleged to have been paid by her in procuring a certificate from physicians attesting to the insanity of said contestant, and for attorney's fees in the preparation of the papers preliminary to obtaining the order from the county judge directing her to be confined in the Buffalo Insane Asylum, and for one-half of the expenses of maintaining and boarding her during her confinement therein.　The contestant objects to these items, and raises the question that the surrogate has no jurisdiction to pass upon them, and this is the only matter left to me to dispose of preliminarily.

Chapter 446 of the Laws of 1874 provides for the confinement of the insane in the Buffalo State Asylum, (title 6 of said act,) and makes an insane person liable for his maintenance therein.　Title 3, § 30; *Insurance Co.* v. *Barnard,* 96 N. Y. 525.　And had the property of the lunatic been insufficient to maintain her, the mother would have been liable therefor.　Title 1, art. 1, §§ 12, 13.　So that the charge itself—*First,* was a proper one to be imposed upon the property of the lunatic; and, *second,* the mother was simply fulfilling the parental duties devolving upon her in providing for this maintenance.　If a committee had been appointed to manage the property of this unfortunate person, it is self-evident the primary purpose to which her property would have been devoted would have been to care for and sustain her. Instead, however, of going through the circumlocution of having a committee appointed, the mother, being the custodian of her daughter's property because she held in her possession the child's portion of her father's personal estate, paid these charges as they arose, obviously expecting to bring them in as a payment to the daughter on her distributive share on the judicial settlement of the account of the administratrix.　Equitably, this made the daughter a debtor of her mother to the extent of these advances.　3 Pom. Eq. Jur. 321, § 1300.　So far as abstract justice is concerned it matters little to the daughter whether this was paid by a committee or by the mother acting as trustee of the daughter in the capacity of administratrix of the father's estate.　That the surrogate, within the equitable powers of his court, has juris-

diction to allow credit for money expended by a parent who is administrator in maintaining his children, seems to be well settled by authority. In *Hyland* v. *Baxter*, 98 N. Y. 610, the court appeals, (at page 616,) says: "There seems to be no good reason arising out of the nature of the question, or the constitution of the tribunal, which should deprive a surrogate, upon the settlement of the account of the administrator, where advances have been made for maintenance, to determine upon equitable principles a claim for an allowance. On the contrary, it would seem to be a very proper place and time to have the question determined, thereby saving expense, and preventing further litigation. It is true that an administrator, in making advances, acts without authority and at his peril, but this is true in every case where a parent, or one *in loco parentis*, or a trustee, or a guardian, makes advances not previously sanctioned by the court, and comes to the court for relief. The fact that the question is an equitable one, and depends on equitable principles, is not a ground of objection to the jurisdiction." See, also, *Haight* v. *Brisbin*, 100 N. Y. 219, 3 N. E. Rep. 74; *Browne* v. *Bedford*, 4 Dem. Sur. 304. Now, there is no substantial difference between the conduct of a mother in providing out of her husband's estate for the care, support, and education of their children, and in her providing for the maintenance of a child afflicted with mental aberration, even though an adult. The obligations of a parent in each case are the mainspring of her actions. She is trustee of each alike, and charged alike with the duty of supporting them. In each case the fund is within the jurisdiction of the surrogate's court, and that court alone directs and determines its distribution, and it is within its incidental powers, and within the equitable jurisdiction vested in it that it passes upon advances like these in controversy for the past maintenance of one so peculiarly dependent upon the mother for providing for her proper confinement. See, also, Code Civil Proc. § 2472, subd. 3; Id. § 2473; and Id. § 2481, subd. 11. It seems to me clear, therefore, that the surrogate's court has ample authority to consider and pass upon these sums paid for the maintenance of the contestant while in the asylum, and the expenses incidental and preliminary to her confinement therein.