JOHN J. B. PRIMEAU, Respondent, v. THE NATIONAL LIFE ASSOCIATION, Appellant.

*Appeal heard on the judgment roll — payment of a life insurance premium by mail — time of mailing a check — payment at a place other than the home office — forfeiture, when not permitted — tender of subsequent premiums, when unnecessary.*

Where the appeal in an action is heard upon the judgment roll therein, it is incumbent upon the appellant in order to succeed to show that the trial court could not, in any view of the facts found, properly order a judgment for the respondent.

Where a life insurance company authorizes, and in substance requests, a person insured by it to make payment of premiums in check and by mail, after the deposit of such check in the post office it is at the risk of the company, and the payment is deemed to have been made at the time of the deposit.

A life insurance company has a right to receive, or to agree to receive, the premiums on its policies at some place other than its home office, or even out of the State, and an authority or request to send the same by mail is a waiver of the provisions of the policy requiring the payment of such premiums at the home office of the company.

A forfeiture will not be permitted upon equivocal or doubtful clauses or words contained in the contract of the party who claims the forfeiture.

Where the premiums of a life insurance policy became due on the first day of a month, and the insurer requested payment thereof by mail, there is no forfeiture of the policy from the fact that the check in payment of a premium mailed on the first day of the month was not received by the company until the following day, in the absence of any restriction in the notice, requesting the assured to send the amount of the premium by mail, notifying him that his check in payment thereof must reach the company on or before the first day of the month.

Where an insurance company informed an assured that his policy had lapsed and been canceled, and made no further calls upon him, and substantially admitted that if money for the payment of subsequent premiums had been tendered it would not have been received, a tender of the payment of subsequent premiums is unnecessary.

APPEAL by the defendant, The National Life Association, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Jefferson on the 26th day of October, 1893, upon the decision of the court rendered after a trial at the Jefferson Special Term.

*W. A. Sutherland,* for the appellant.

*Henry Purcell,* for the respondent.

MERWIN, J.:

The appeal in this case is heard upon the judgment roll. In such a case it is incumbent on the appellant to show that the trial court could not, in any view of the facts found, properly order a judgment for respondent. (*Agri. Ins. Co.* v. *Barnard,* 96 N. Y. 525.)

The defendant is a foreign corporation located at Hartford, Conn., and is doing a life insurance business in the State of New York upon the co-operative or assessment plan. On the 10th of June, 1892, the defendant duly issued and delivered to plaintiff a policy of insurance upon his life in the sum of $2,000. The beneficiary was Kate A. Primeau, the wife of plaintiff. This policy, among other things, provided that the premiums thereon should be paid at Hartford, Conn., on the first week days of the months of February, April, June, August, October and December in each year, and that a failure to make any payment of premium on or before the day it was due would work a forfeiture of the policy. The plaintiff was a resident of the city of Watertown, in this State, and he regularly paid all assessments or premiums made or called for by defend-

ant to and including the one due December 1, 1892. Another assessment or premium became due February 1, 1893. Whether the plaintiff made default in the payment of this is the main question in this case.

On the 2d day of January, 1893, the defendant sent by mail to the plaintiff a notice, signed by its secretary, stating as follows: "The bi-monthly premium on your policy No. 1652 of $8.50, will be due and payable at this office on or before the 1st day of February, 1893. Agents are not authorized to collect the above amounts. Make all checks and post-office orders payable to the National Life Association. Please inclose this notice with your remittance and it will be stamped paid and returned to you." On the same page below this notice there was printed matter, headed "Important," and signed by the general manager of the defendant as follows: "Notice.— This premium is payable at Hartford, Conn.. on or before February 1st.

"While most of our members make their payments promptly there are some who are always late, and who seem to think that their payments ought to be accepted by the company whenever they are ready to pay. We would call especial attention to the fact that the last day of payment named in this notice is the same as the last day of grace on a note, and that if payment is not made on or before the day due that the policy is lapsed, and can only be reinstated at the option of the association, and if reinstated, parties will be required to sign a health certificate. * * *

"We inclose you an envelope directed to the company, which please use in sending your remittance."

Notices, identical with this except as to the dates and amounts, had been sent by defendant to plaintiff by mail before each of the prior payments. The payments were all made by checks drawn to the order of defendant upon a Watertown bank and each was sent to defendant by mail in the envelope mentioned in the notice. The notice for the payment due October 1, 1892, was sent to plaintiff on September 10, 1892, and was subsequently stamped paid October 1, 1892. The notice for the payment due December 1, 1892, was sent November 10, 1892, and was stamped paid December 1, 1892. The payments of October 1 and December 1 were made by depositing the check and envelope in a street letter box of the post office of

the city of Watertown, which is located about twenty rods from the post office, on the day next preceding the said first October, and first December respectively, and the letters so deposited left Watertown by the evening mail, and were delivered to the defendant at its home office on the days following the mailing of the same.

On the 31st January, 1893, the plaintiff was sick and unable to attend to any business. Thereupon his wife, the beneficiary in the policy, for the purpose of paying the amount, made her check for the proper amount on a Watertown bank to the order of defendant and placed it with the notice in the envelope sent by the defendant for that purpose, properly sealed and postage prepaid, and deposited it in the same letter box where she had previously deposited like remittances to the defendant. This was done at five o'clock in the afternoon. There was a regular collection of mail from this letter box at four o'clock in the afternoon, and collections were also made from it by the letter carriers of the post office upon their return trips from distributing a mail which at that time arrived or was due to arrive at four o'clock, and these collections, when the four o'clock mail arrived on time, were made in time for the outgoing mail that evening for New York and Hartford. This four o'clock mail was late on the afternoon of January thirty-first, so that the carriers who made collections on their return from distributing it, did not take up the letter in question in time for the outgoing mail that evening which left at six o'clock. As a result, the letter to defendant left Watertown on the morning of February first, reached Hartford the evening of that day, and was delivered to defendant the morning of February second. On that day the defendant notified plaintiff by letter that the premium was not received on the first day of February, and that in order that the plaintiff might be reinstated it would be necessary for him to sign a certificate of good health in a certain form. To this the plaintiff, on the third of February, caused a reply to be sent that he could not then give such a certificate. The defendant kept the check until February sixth, when it was returned to plaintiff's wife with a letter acknowledging the receipt of the letter of the third of February and saying that, as her husband could not sign the health certificate, they return the check and have marked the policy lapsed on their books. On the eighth of February the plaintiff made an offer to defendant of the money for the premium,

PRIMEAU v. NATIONAL LIFE ASSN.

but the defendant refused to take it on the ground that the policy had previously lapsed and been canceled.

The check sent by plaintiff's wife on the thirty-first of January was a good one, and no objection was made to accepting it except that it was not received by defendant on or before the first day of February. The defendant in all the notices to plaintiff authorized and empowered him to make payments by checks upon a bank in Watertown.

On the day in question the plaintiff's wife did not know that the four o'clock mail was late, or that the carriers went out late from the post office. She was a milliner engaged in business at a place near the letter box referred to, and had often observed the mail carriers, on their return trip from distributing the four o'clock mail, collecting mail from that box after five o'clock and before six o'clock, and when she deposited in that box the letter on the thirty-first of January, she understood and believed that the same was deposited in time to leave Watertown by the outgoing mail at six o'clock. The irregularities in the time of the collection of mail from the box in question, after the incoming of the four o'clock mail about the time in question, were due largely to the weather, which delayed the trains, and the plaintiff and his wife knew, or had reason to know, of such delays of the trains. In the month of January these irregularities were such that upon a majority of the days of that month the collections by the returning carriers were too late for the evening mail.

These are the main facts, as appearing from the findings, on the subject of the disputed payment. It was held by the Special Term that the mailing of the check by the plaintiff's wife on January 31, 1893, was such an act on the part of plaintiff and his wife as prevented the defendant from declaring the policy lapsed, and that the policy did not lapse and become null and void on February 1, 1893.

It is to be observed that the defendant authorized the plaintiff to make payments in checks upon a Watertown bank. It is also very clear that the defendant authorized, and, in substance, requested the plaintiff to make the payment in question, as well as previous payments, by mail. It sent each time to the plaintiff an envelope directed to the company and requested him to use it in sending his remit-

tance, and the payments had previously been so made. We have then, in effect, a case where, by the authority of the creditor, a payment is sent by mail. In such a case, after deposit in the post office, it is at the risk of the creditor, and the payment is deemed to have been made at the time of the deposit. (2 Greenl. on Ev. § 525; Pars. on Cont. 620: 2 Chitty on Cont. [11th ed.] 1106; 2 May on Ins. § 340: *Morgan* v. *Richardson*, 13 Allen, 410, 411; *Buell* v. *Chapin*, 99 Mass. 596; *Colvin* v. *U. S. Mut. Accident Assn.*, 66 Hun, 543.) In *Palmer* v. *Phœnix Mut. Life Ins. Co.* (84 N. Y. 71) it was held that if money was sent to the defendant by mail, according to its request, it was at the defendant's risk, and the same thing was held as to a check in *Kenyon* v. *K. T. & M. M. A. Assn.* (122 N. Y. 247).

If the payment in question took effect at the time of deposit, then there was no default, and the defendant would not be in a position to claim a forfeiture. It had a right to receive it, or agree to receive it, at some other place than its home office, or out of the State. (*Hastings* v. *B. L. Ins. Co.*, 138 N. Y. 474, 479.) Authority or request to send by mail was a waiver of the provisions for payment at the home office.

But it is argued that the letter should have been mailed in time, so that by the regular course of mail it would have reached the defendant on the first day of February. This depends on whether the authority from defendant to the plaintiff to make payment by mail was restricted in that way. There was no such restriction, in terms at least, in the notice the defendant sent to the plaintiff. That stated that the premium was due and payable at the home office, or at Hartford, on or before the first day of February. It also, in effect, stated that the plaintiff might make payment by mail in Watertown checks. It did not state that, if payment was made in that way, the mailing must be made long enough before the first of February to enable the letter to reach the defendant by the first.

A number of cases are cited as to the rule in case of mailing notice of protest to a party living at the same place with the party giving the notice. Those cases hardly apply here. The case of *Hodgkins* v. *Montgomery* (34 Barb. 213) seems to have been reversed in the Court of Appeals. (See 41 N. Y. 620.)

In the answer in the present case it is alleged that the only objec-

tion the defendant made to accepting the check was that it was not received by the defendant on or before the first day of February. If the defendant, although authorizing or requesting payment by mail, still designed to claim forfeiture if the letter did not get to the home office by the first of February, should it not have so stated in its notice to the plaintiff? A restriction of that kind and with that effect should not be inferred from doubtful language. A forfeiture will not be permitted upon equivocal or doubtful clauses or words contained in the contract of the party himself who claims the forfeiture. (*Baley* v. *Homestead Fire Ins. Co.*, 80 N. Y. 23; *Griffey* v. *N. Y. Cent. Ins. Co.*. 100 id. 417.)

In view of the authority to make payment by mail in checks, and the failure to give any specific restriction as to the time of mailing, and in view of the circumstances under which the mailing was in fact made, it should not, I think, be held that the defendant had a right to claim a forfeiture.

It is further claimed by the defendant that the plaintiff cannot maintain this action because he has made no tender of premiums coming due since February 1, 1893. The defendant informed the plaintiff that his policy had lapsed and been canceled, made no further calls upon him, and substantially admits that if money for subsequent premiums had been tendered it would not have received it. We think that a tender for subsequent premiums was not necessary. (*Meyer* v. *Knickerbocker Life Ins. Co.*, 73 N. Y. 516, 528, and cases cited; 2 May on Ins. § 358.) No fault is found with the form of the judgment.

These considerations lead to an affirmance.

HARDIN, P. J.. and MARTIN. J.., concurred.

Judgment affirmed. with costs.