In re THOMAS.

(Supreme Court, Appellate Division, Third Department.　September 6, 1899.)

1. INSANE PERSONS—REMOVAL OF COMMITTEE—STANDING OF PETITIONER FOR REMOVAL.

Though the supreme court, in its discretion, may refuse to act on the petition of a nephew of a lunatic for the removal of his committee, the nephew has the right to give information to the court, which the court, in its discretion, may act on.

2. SAME—JURISDICTION OF COURT—SPECIAL GUARDIAN.

Where a special guardian adopts the report of a referee appointed to examine and pass on the accounts of a committee of the lunatic's person and estate, moves for the confirmation of such report and for the removal of the committee, the lunatic is properly 'before the court, and an order removing the committee is binding on the lunatic, though the special guardian was not appointed until after the referee had been appointed and his report was ready for presentation to the court.

3. SAME—ACCOUNTING OF COMMITTEE—INVESTMENTS.

Where a committee of a lunatic's person and estate invested a portion of the money belonging to the lunatic in mortgages, he should not be charged, in an accounting, with the amount so invested in addition to the principal sum.

4. SAME—FILING VOUCHERS.

Code Civ. Proc. § 2729, providing that on an accounting by an executor or administrator the accounting party must file a voucher for every payment, except where the total of small items of less than $20 each does not exceed $500, and where it is shown by competent evidence that a payment was made without a voucher, or that the voucher was lost, is applicable to an accounting by the committee of an incompetent person, as section 2850 makes section 2729 applicable to an accounting by a guardian, and section 2341 makes section 2850 applicable to an accounting by the committee of an incompetent person.

Appeal from special term, Albany county.

Petition by Harry B. Chapman for an accounting, and removal of Jeffrey P. Thomas as committee of the person and estate of Nancy C. Warner, an incompetent person. From an order judicially settling the accounts of the committee, removing him from his trust, appointing his successor, and directing him to pay to his successor $7,266.87 belonging to the estate, and the income thereof from January 14, 1898, less certain payments ordered by the court for the support of the incompetent, and for costs, said committee appeals.　Modified.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Charles Irving Oliver and A. C. Tennant, for appellant.

Arthur L. Andrews, for respondent.

LANDON, J.　The lunatic is an unmarried woman, having two sisters, one of whom is the wife of Jeffrey P. Thomas, the committee of the lunatic's person and estate, and the other is the mother of Harry B. Chapman, the petitioner.　The committee objects that the petitioner has no right to institute this proceeding.　His petition is supported by the affidavit of his mother.　It probably is true that the court, in its discretion, could refuse to take action upon the nephew's petition, if it seemed to it proper to refuse.　But "the jurisdiction of the supreme court extends to the custody of the person and

the care of the property" of the lunatic.    The court "must preserve his property from waste or destruction, and out of the proceeds thereof must provide for the payment of his debts, and for the safe-keeping and maintenance, and the education, when required, of the incompetent person and his family."    This jurisdiction "must be exercised by means of a committee."    Code Civ. Proc. §§ 2320–2322.    The committee "is subject to the direction and control of the court by which he was appointed with respect to the execution of his duties, and he may be suspended, removed, or allowed to resign, in the discretion of the court."    Id. § 2339.    Thus the lunatic is the ward of the court, and the committee is its officer or arm to execute the duties devolving upon the court.    In re Otis, 101 N. Y. 580, 5 N. E. 571.    The jurisdiction is of an equitable nature.    In England it was early supposed to belong to the crown, and not to the court, except as delegated by the crown to the chancellor, or some other officer.    Finally, by statute, the jurisdiction was committed to the chancellor.    This peculiarity in regard to the origin of the chancellor's jurisdiction apparently led it to be doubted in this state whether the care of incompetent persons was part of the general jurisdiction in equity which devolved upon the chancellor, and thus led to chapter 12, Laws 1788 (2 Laws N. Y. 1777–1801 [New Ed.]), vesting the chancellor with the jurisdiction which is now vested in the supreme court.    In re Brown, 4 Duer, 613.    The jurisdiction is conferred without restriction (In re Wendell, 1 Johns. Ch. 600; In re Tracy, 1 Paige, 580; In re Mason, 1 Barb. 436), except that, where the practice is prescribed in some particulars, other practice in such particulars is by implication forbidden. In other respects the court may adopt such practice as the particular exigency requires.    While it may be true that the petitioner had no special right to institute this proceeding, it was his privilege to give information to the court, and the court, in its discretion, might act upon it.    As the court said in Insurance Co. v. Barnard, 96 N. Y. 525, the court "had authority to proceed, and make such order in the premises as the statute required, however the facts may have been brought to its knowledge."    This objection is, therefore, not well taken.

The committee objects that no special guardian was appointed for the lunatic in the first instance, and not until after a referee had been appointed by the court to take, examine, and pass upon his accounts for the information of the court, and the referee's report was ready for presentation to the court.    If the views already expressed are correct, the proceeding thus far was to enable the court to ascertain from the committee's own accounts whether its servant had been faithful to the trust the court had confided to him.    If he had been, the court need not proceed further, except to approve the accounts and to direct their filing.    If there was probable cause for the court to believe that he had been unfaithful, then it was proper for the court to appoint a special guardian for the lunatic, to take up the proceeding, adopt the report of the referee, or ask for a further hearing in respect to the accounts, and, if so advised, move for an adjudication by the court upon the accounts, and ask for the removal of the committee.    In the present case the special guardian did adopt the

report of the referee, moved for its confirmation, and for the removal of the committee. The lunatic is, therefore, properly before the court, and the order of the court is binding upon her, having been obtained in the judgment of the law by her procurement. No doubt it may be opened in equity for fraud or mistake, but otherwise it is conclusive.

The provision of section 2342 for appointing a special guardian for the purpose of filing a petition in behalf of the lunatic for the removal of the committee and prosecuting the necessary proceedings for that purpose is an additional authority conferred upon the county judge in cases where the committee was appointed by the supreme court, where the county judge, upon examination of the committee's annual report, or upon his failure to make it, or comply with the order of the county judge to make it more full or satisfactory, has reason to believe that sufficient cause exists for his removal. It does not necessarily prescribe the practice when the supreme court, for reasons satisfactory to itself, directs an examination of the accounts and conduct of the committee. We thus reach the accounts as reported by the referee and confirmed by the court. The committee was appointed in June, 1876, and this proceeding was instituted in November, 1897, more than 21 years afterwards. The committee never had filed any account. We have examined his accounts now filed, and the evidence adduced upon the hearing, and, to say the least, the committee's administration of his trust seemed to proceed upon the theory that her estate was his, subject to the charge upon him of her support. It appears that immediately upon his appointment there came to his hands $7,200. After a careful examination we are satisfied that the learned referee in stating the account fell into an error in charging the committee both with the $7,200 and with the Nichols and Godfrey mortgages, so called, amounting to $2,900. The latter were investments out of the former, and not assets in addition thereto. The referee should have treated these mortgages as part of the $7,200 of principal, or should have treated the $7,200 as principal, and, regarding it as invested, or so much of it as the evidence shows ought to have been kept invested, he should have ascertained the income it ought to have produced. The latter method seems to us the only one which the unsatisfactory state of the accounts permits us to adopt. Of the $7,200, $5,100 were in United States bonds bearing interest at 5 per centum; $1,000 in a note of the committee himself, payable to the lunatic, with interest; and $1,100 of cash assets. The invested funds produced at least $315 annually, and if we leave $400 in the hands of the committee for expenses, the balance—$700—should have produced $35; total, $350. Section 2321 provides that the court, acting through the committee "must preserve his [the lunatic's] property from waste or destruction, and out of the proceeds thereof must provide for  *  *  *  [his] safe-keeping and maintenance." If the proceeds are insufficient, the committee should apply to the court for leave to employ part of the principal. If this income could have been realized each year for 21 years, it would have amounted to $7,350. The committee reports only $3,517.03 of income, or $3,832.97 less than we have assumed. If we surcharge the income

with half of this difference,—$1,966.48,—we feel that we deal as liberally with the committee as justice to the lunatic will permit. He should therefore account for $7,200 of principal and $5,483.51 of income. This total of income is what a principal of $6,528 at 4 per centum per annum would have produced in 21 years. We conclude to charge the committee with $12,683.51. He claims credit for disbursements, $8,080.98. The referee allowed him the amount, less $1,177.90, being credits in excess of $500 without vouchers, and not otherwise supported by competent testimony, under the rule applicable to executors' and administrators' accounts. Code Civ. Proc. § 2729. The committee contends that section 2729 is not applicable. What is now section 2729 was until 1893 section 2734, and was by section 2850 made applicable to an accounting by a guardian. Section 2341 made section 2850 applicable to the accounting by the committee of an incompetent person. The phraseology is obscure, but we think such was the intention. In 1893 the legislature amended the surrogate's law, and changed the number of the sections, so that what was formerly section 2734 is now section 2729. But the legislature manifestly forgot to make the corresponding change in section 2850 of No. 2734 to No. 2729. There could have been no intent to change the law, and we think there was an intent to preserve it, and we feel justified in holding that it is unchanged. People v. Lucas, 25 Hun, 610; People v. Clute, 50 N. Y. 456; People v. Palmer, 52 N. Y. 83; People v. Lord, 9 App. Div. 458, 41 N. Y. Supp. 343. Apart from this rule, we think that many of the items ought to be rejected upon the merits. A considerable item is for carriage hire incurred in enabling plaintiff's mother to visit the incompetent. These visits were commendable, but the mother had means of her own, and under the circumstances the propriety of charging the lunatic with the expense of these visits, in the absence of any order from the court, is doubtful. The same may be said of boxes of good things sent to the lunatic, and charged by the box. There are other objectionable items. This disallowance leaves the committee credited with $6,903.08. Deducting this from $12,683.51, leaves him a debtor to the estate in $5,780.43 as of January 14, 1898. We cannot say that this is exactly right, but it is an approximation which we believe is about right. The special term was justified in removing the committee, and denying him commissions.

The order appealed from is modified by charging the committee with $5,780.43, instead of $7,266.87, and, as so modified, affirmed, without costs of this appeal. All concur.